CHARLES ORR STARNES v. FREDERICK H. TAYLOR, M.D.

(Filed 12 January, 1968.)

1. **Physicians and Surgeons § 20— Evidence held insufficient to show that plaintiff's esophagus was perforated by negligence.**

   Plaintiff's evidence was to the effect that he underwent an esophagoscopy performed by the defendant surgeon to diagnose his difficulty in breathing, that the procedure involved the insertion into the esophagus of a metal tube with a light attached, that during the course of the examination an attempt to go below the narrow area of the esophagus was unsuccessful, and that as the esophagoscope was being removed the defendant did not detect any lesion or break in the walls of the esophagus. The defendant testified that he had performed two thousand procedures of this type and that the risk of perforating the esophagus was between one in 250 and one in 500. The plaintiff developed extreme pains in his throat and chest following the examination, whereupon defendant discovered that plaintiff's esophagus had been perforated. *Held:* Although plaintiff's evidence is sufficient to justify a finding that his esophagus was perforated during the examination, it is insufficient to show that the result was caused by negligence, the doctrine of *res ipsa loquitur* being inapplicable, and nonsuit was properly entered.

2. **Physicians and Surgeons § 11—**

   To establish liability upon the surgeon or physician in an action for malpractice, there must be proof of actionable negligence by the defendant which was the proximate cause of the plaintiff's injury or his worsened condition.

3. **Same—**

   In the absence of a contract or other representation, the surgeon or physician is not ordinarily an insurer of the success of his operation or treatment.

**4. Same—**

A physician or surgeon may be held liable only for such damage as proximately results from his failure to possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess, or his failure to exercise reasonable care and diligence in his application of his knowledge and skill to the patient's case, or his failure to use his best knowledge in his treatment and care of the patient.

**5. Same—**

In the absence of fraud or misrepresentation a physician or surgeon must be given wide discretion in advising the patient as to possible consequences of an operation or treatment where the possibility of an adverse result is relatively slight.

**6. Physicians and Surgeons § 20—**

In a malpractice action, evidence that defendant surgeon had performed some two thousand esophagoscopic examinations and that the occurrence of a perforation of the esophagus in such procedure is unusual, and that the defendant gave plaintiff his customary warning that any surgical procedure is accompanied by some risk, *held* insufficient to show that defendant was negligent in advising the plaintiff of the consequences of the examination.

**7. Physicians and Surgeons § 19—**

Nothing else appearing, the surgeon's duty to his patient does not end with the termination of the operation, and in the subsequent treatment of the patient the surgeon must give him such attention as the necessity of the case demands.

**8. Same—**

Evidence that the defendant surgeon performed an esophagoscopy upon the plaintiff and that he did not detect any break or lesion in the esophagus wall during the course of the examination, that some pain was normally anticipated following such an examination but that a perforation of the esophagus wall was highly unlikely, that plaintiff was left in the care of a nurse with instructions concerning the relief of pain, and that, upon plaintiff's complaint of severe pain in the throat and chest, defendant discovered a perforation in the esophagus and promptly closed the opening by an operation, *held* insufficient to justify a finding of negligence.

APPEAL by plaintiff from *Froneberger, J.,* at the 3 April 1967 Schedule B Civil Session of MECKLENBURG.

This is an action for damages for alleged negligent malpractice by the defendant, a surgeon, resulting in injury to the plaintiff, his patient. At the close of the plaintiff's evidence, a judgment of nonsuit was entered from which the plaintiff appeals, the allowance of the motion for judgment of nonsuit being his only assignment of error.

The following facts are alleged in the complaint and admitted in the answer: The defendant is duly licensed to practice medicine and surgery in North Carolina and holds himself out to the public as be-

ing qualified to engage in such practice, including the practice of thoracic surgery. In May 1963 the plaintiff, having consulted a general practitioner of medicine concerning difficulty which he had experienced in swallowing solid food, was referred by that doctor to the defendant. Prior to the referral, the doctor first consulted had made x-ray examinations of the plaintiff, which showed a narrowing of his lower esophagus and a diaphragmatic hernia. Pursuant to the referral, the plaintiff was admitted to the hospital as the defendant's patient for the performance of an esophagoscopy for the further study and evaluation of his difficulty. This surgical procedure was performed by the defendant on the day following the admission of the plaintiff to the hospital.

The complaint further alleges that the defendant was negligent in the following respects, the answer denying these allegations: (1) The defendant failed properly to prepare and instruct the plaintiff prior to the operative procedure; (2) he disregarded other diagnostic evidence; (3) he performed the esophagoscopy with greater force than was necessary and without taking proper precautions to prevent perforation of the esophagus; (4) he perforated the esophagus in performing the esophagoscopy; and (5) after the operative procedure he failed properly to attend and treat the plaintiff.

The plaintiff's evidence consisted of his own testimony, that of his wife, that of the head nurse on the hospital hall, the adverse examination of the defendant by the plaintiff, and the hospital records. The following is the summary of this evidence:

### The Defendant's Testimony on Adverse Examination:

The narrowing of the plaintiff's esophagus was at a point just above the entry into the stomach. The surgical procedure consisted of the insertion of an adult-size esophagoscope into the esophagus and down to the point of the narrowing. This device consists of a metal tube with a light in it which enables the surgeon to observe the walls and condition of the esophagus during the insertion and withdrawal of the esophagoscope.

Prior to undertaking this procedure upon the plaintiff, the defendant had made special studies in this field of surgery and had performed approximately 2,000 procedures of this type. In the course of these examinations of other patients, perforations of the esophagus had occurred. The ratio of the occurrence of such perforations to such procedures undertaken is somewhere between one in 250 and one in 500. An attempt, such as was made in this instance, to dilate a stricture in an esophagus would increase the risk of perforation at the point of such attempted dilation but would not increase the risk of a perforation elsewhere in the esophagus.

The defendant habitually explains to all of his patients that "any procedure carries risk," and he probably explained to the plaintiff that the procedure to be followed in his case carried risk. He does not think that he used the term "perforation" in this explanation of the procedure and of its risk to the plaintiff. He does not remember the exact conversation with the plaintiff since it occurred more than two years prior to his adverse examination in this litigation.

For this procedure the plaintiff's throat was anesthetized. In order to determine the nature, extent and cause of the stricture of the esophagus a biopsy was performed, a small amount of tissue being taken for examination, and an attempt was made to dilate the narrowed area so as to get the esophagoscope further down, but it would not pass below the narrow portion of the passage. The esophagoscope was then removed. Throughout this procedure the defendant observed the walls of the esophagus. He saw no lesion or break therein as he was removing the esophagoscope. No bleeding was seen and the patient appeared to be in good condition. There was, at that time, no indication of any complication. The entire operative procedure required approximately 20 minutes and was completed at 1:50 p.m. The patient was then taken to the recovery room, where he was seen by the defendant. At 2:40 p.m. he was taken from the recovery room back to his own room in the hospital.

The defendant left instructions for the nurse to keep the plaintiff from having anything by mouth until two hours after the completion of the procedure. He returned to his office and spent the afternoon seeing other patients. Normally, if anything "unusual or out of the ordinary" occurred to one of his patients he would be informed of it. He received no such information concerning the plaintiff. He gave the nurse no specific instruction concerning any swelling of the neck in the plaintiff's case. There had been no such visible swelling of the neck when he next saw the plaintiff.

Without being "called," the defendant returned to the hospital at 7 p.m. to make a routine check of the plaintiff. He then found the plaintiff complaining of pain in his neck and between his shoulder blades. There was no visible swelling of the neck but there was indication of air in the soft tissues of the neck. Suspecting that this was due to a perforation of the esophagus, the defendant had an x-ray examination made of the plaintiff immediately. This confirmed the existence of a perforation of the esophagus and the presence of air in the tissues of the neck. For the reason that such perforation would permit fluids, air and other matter to get into the soft tissues of the neck, with the resulting danger of infection, the defendant determined that it was necessary to operate immediately

to close the perforation and drain from the affected area such foreign matter as had leaked through the perforation. This operation was performed promptly by the defendant.

The perforation of the esophagus was approximately one-tenth of an inch in length and was not at the point of the stricture, at which the attempted dilation had been undertaken during the first operation, but was some ten inches higher up the esophagus.

By this second operation the defendant closed the perforation and inserted drains. Thereafter, the plaintiff developed extensive infection in the mediastinum and the chest cavity, which required further operations and prolonged hospitalization. This infection resulted from the perforation of the esophagus.

### *The Testimony of the Nurse:*

Entries made by the nurse upon the hospital records show that the defendant ordered the plaintiff to have nothing by mouth for two hours following the surgical procedure. The plaintiff was having pain before the two hours expired and requested that he be given something for it. Since this would require the swallowing of a pill with water, the nurse communicated with defendant, who gave permission for the plaintiff to take the pill at that time. The plaintiff could not take it because he could not swallow. He still needed something for the pain and the nurse informed the defendant of that circumstance and asked if the plaintiff could be given something by another method. The defendant then ordered a hypodermic, which the nurse administered at 4:10 p.m. There is no entry on the record covering the period from 4:10 p.m. to the defendant's return to the hospital at 7 p.m.

### *The Testimony of the Plaintiff:*

Upon entering the hospital the plaintiff planned to stay two or three days. He remained 41 days. When the esophagoscopy was completed, the defendant told the plaintiff that it was a "rough examination." The plaintiff's throat was sore. He could not swallow his saliva. His neck felt as if it was swollen. He had extreme pain in his throat and chest. He was alarmed because he could not talk.

### *The Testimony of the Plaintiff's Wife:*

When the plaintiff returned to his room following the esophagoscopy, he was in extreme pain and was not able to talk. He was moaning and groaning. His wife asked the nurse to give him something for the pain. After an interval the nurse returned with tablets

but the plaintiff could not take them. His wife told the nurse he would have to have something else for pain, and a few minutes after 4 p.m. the nurse gave him a shot which helped him slightly. The defendant came back to the hospital at approximately 7 p.m., examined the plaintiff and told the plaintiff's wife that the plaintiff "had trouble" which needed to be corrected immediately. In response to her question, he told her that this trouble "was done during the operation" and that the corrective procedures, above described, were necessary immediately.

*Myers and Sedberry for plaintiff appellant.*
*Helms, Mullis, McMillan & Johnston by James B. McMillan and R. Malloy McKeithen for defendant appellee.*

LAKE, J. Unquestionably, the evidence of the plaintiff is sufficient, when taken to be true as it must be upon a motion for judgment of nonsuit, to show that in the course of the esophagoscopy performed by the defendant, the plaintiff's esophagus was perforated and that infection resulted therefrom, causing the plaintiff to become a very sick man and to sustain pain, suffering, prolonged disability and increased expense. The question for determination is whether the evidence is sufficient to support a finding that the proximate cause of these unfortunate occurrences was a negligent failure of the defendant to perform a professional duty owed by him to the plaintiff, his patient.

Proof that the plaintiff, as patient, was operated upon or treated by the defendant, as surgeon or physician, and that, as a result of such operation or treatment, the plaintiff was injured and his condition was worse after the operation or treatment than before is not sufficient to establish liability of the defendant for such injury. The doctrine of *res ipsa loquitur* does not apply to such a situation. To establish liability upon the surgeon or physician in malpractice cases, there must be proof of actionable negligence by the defendant, which was the proximate cause of the plaintiff's injury or worsened condition. The surgeon or physician is not, ordinarily, an insurer of the success of his operation or treatment. *Lentz v. Thompson,* 269 N.C. 188, 152 S.E. 2d 107; *Galloway v. Lawrence,* 266 N.C. 245, 145 S.E. 2d 861; *Watson v. Clutts,* 262 N.C. 153, 136 S.E. 2d 617; *Hunt v. Bradshaw,* 242 N.C. 517, 88 S.E. 2d 762; *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356. In the absence of proof of a contract to that effect, a surgeon or physician does not warrant a cure, or even that the patient will be in as good condition after the operation or treatment as he was in prior thereto. *Smith v. McClung,* 201 N.C. 648, 161 S.E. 91.

STARNES *v.* TAYLOR.

The measure of the undertaking and duty of a surgeon or physician, in the absence of proof of a different contract, is thus stated by Higgins, J., speaking for the Court in *Hunt v. Bradshaw, supra:*

"A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. [Citations omitted.] If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

In the present case there is no contention that the defendant, at the time of his treatment of the plaintiff, did not possess the degree of professional learning, skill and ability ordinarily possessed by others in that branch of the practice of medicine in which he engages and which was involved in the procedure performed upon the plaintiff. It is likewise not contended that the defendant failed in any way to exercise properly such skill and care in all subsequent operations for and treatment of the plaintiff's condition after the discovery of the complication resulting from the perforation of the esophagus. The plaintiff contends that the defendant was negligent in that: (1) He failed prior to the commencement of the esophagoscopy to advise the plaintiff of the risk of such perforation of the esophagus and of the resulting infection; (2) he perforated the wall of the esophagus in the course of this procedure; (3) he failed to discover the perforation and commence the corrective procedures earlier. The question for us to determine is whether the plaintiff has introduced sufficient evidence of any of these allegations to justify the submission of the issue of the defendant's negligence to the jury.

The plaintiff does not contend that the performance of an esophagoscopy was not indicated by the result of prior examinations of the plaintiff's condition, or that the decision to perform it was not in accord with the highest standards of medical judgment. This Court has discussed the duty of a physician or surgeon to advise his patient, or the parent or other person acting for the patient, of risks inherent in a proposed operation or treatment in *Sharpe v. Pugh,* 270 N.C. 598, 155 S.E. 2d 108; *Watson v. Clutts, supra;* and *Hunt v. Bradshaw, supra.* We adhere to the principles there stated. See also

the discussion of this matter in Annotation, 79 A.L.R. 2d 1028. As in *Sharpe v. Pugh, supra,* we deem it unnecessary and unwise to attempt, in the decision of this appeal, to define precisely the extent and limits of the legal duty of a physician or surgeon to make known to his patient, or to the person acting for the patient, the possible or probable adverse effects from a contemplated operation, treatment or use of a drug.

Where, as here, there is no contention of fraud or misrepresentation by the surgeon in order to induce the patient to undergo an unnecessary or unwise surgical procedure, and the likelihood of an adverse result is relatively slight, much must be left to the discretion of the physician or surgeon in determining what he should tell the patient as to possible adverse consequences. While the patient, or the person acting for him, has the right to an informed election as to whether to undergo the proposed operation, treatment or to take a prescribed drug, it must be borne in mind that the physician's or surgeon's primary concern at the time of the consultation is, and should be, the treatment of the patient's illness or disability, not preparation for the defense of a possible lawsuit. Obviously, an increase in the normal anxiety of one about to undergo a surgical procedure is not medically desirable. Advice, which is calculated to increase such anxiety by recounting unlikely possibilities of undesirable consequences, is not consistent with the above stated duty of the physician or surgeon to his patient. A different situation is presented when the physician or surgeon knows, or should know, the proposed operation, treatment or drug has a high ratio of adverse reactions or complications of a serious nature, not likely to be known to the patient. See: *Sharpe v. Pugh, supra; Mitchell v. Robinson,* (Mo.) 334 S.W. 2d 11, 79 A.L.R. 2d 1017.

The evidence in this record does not disclose any false statement or unwarranted assurance by the defendant to the plaintiff. The evidence is that the occurrence of a perforation of the esophagus in the course of the procedure here contemplated and followed is quite unusual, the incidence being one to 250 or one to 500. The evidence is that the defendant gave the plaintiff the customary warning that any surgical procedure is accompanied by some risk of unfortunate consequences. There is nothing to indicate that the most complete discussion of the risk attendant upon this procedure would have deterred the plaintiff from consenting to its performance. Therefore, there is no evidence of negligence by the defendant prior to the performance of the esophagoscopy.

There is a complete absence of evidence of negligence in the performance of the procedure itself. The evidence is that the equipment

used was standard for that purpose. There is nothing to indicate that it was not in perfect condition. There is no evidence of undue force, neglect or lack of skill in the manipulation of the esophagoscope. The evidence is clear and undisputed that the defendant observed the walls of the esophagus as he withdrew the equipment and did not detect the perforation, which appears to have been quite small and to have produced no bleeding. There is no evidence to indicate that he should have detected it in that process. The evidence, therefore, is not sufficient to support a finding of any negligence by the defendant in the performance of the esophagoscopy.

The surgeon's duty to his patient does not, of course, end with the termination of the operation itself, nothing else appearing. As Stacy, C.J., said for this Court in *Nash v. Royster, supra,* the surgeon "must not only use reasonable and ordinary care, skill and diligence in its performance, but, in the subsequent treatment of the case, he must also give, or see that the patient is given, such attention as the necessity of the case demands." In *Galloway v. Lawrence, supra,* we held that evidence, from which the jury could reasonably infer that a surgeon, who was advised by the nurse in charge of the patient of symptoms indicating the onset of a dangerous complication, had delayed unreasonably a further examination of the patient, required the submission to the jury of the issue of negligence in the post operative treatment.

The evidence in this case is not of that nature. It shows that the defendant saw the plaintiff in the recovery room after the esophagoscopy and there was then no indication of any complication. There is nothing in this record to indicate that, in the absence of a perforation of the esophagus, any complication was to be anticipated as even a possibility. Perforations of the esophagus by the procedure here followed are rare. None had been observed as the esophagoscope was withdrawn in this case. Under these circumstances, the defendant was not negligent in returning to his office, leaving the plaintiff in the care of a competent hall nurse.

The record does not indicate that pain and difficulty in swallowing, after the wearing off of the anesthetic, is unusual following an esophagoscopy. Evidently, such pain was anticipated since the defendant left instructions for the administration of tablets to relieve pain after two hours. There is nothing in the record to indicate that the telephone calls from the hall nurse, prior to the expiration of the two hours, disclosed anything other than the presence of normal pain. There was no visible swelling of the neck. Five hours after the conclusion of the procedure the defendant returned to the hospital for a routine check upon his patient. He then discovered sym-

ptoms which he then correctly interpreted as indicating a perforation of the esophagus, for which he took immediate corrective action. We find in this record no evidence of negligence by the defendant in the post operative care of his patient. Consequently, the judgment of nonsuit was proper.

No error.