JAMES O. BRAWLEY v. DR. ROBERT C. HEYMANN

No. 7221SC491

(Filed 20 September 1972)

**Physicians and Surgeons § 16— injury sustained in fall — degree of care required of physicians — summary judgment improper**

Where the evidence would permit a jury to find that defendant unnecessarily left plaintiff unsecured and unattended on a narrow examining table at a time when plaintiff had not fully regained consciousness after fainting and that it was reasonably foreseeable that a person in plaintiff's condition was likely to fall from the table

Brawley v. Heymann

unless secured or attended and that plaintiff did fall and sustain injuries, a jury could reasonably conclude that defendant failed to give plaintiff such care as a reasonably prudent physician in the same or similar circumstances would have provided and that such negligence was a proximate cause of plaintiff's injuries; therefore, the trial court erred in granting summary judgment for defendant physician.

APPEAL by plaintiff from summary judgment entered for defendant by *Gambill, Judge,* 21 February 1972 Session of Superior Court held in FORSYTH County.

Negligence action against defendant, a licensed physician specializing in dermatology, to recover for injuries sustained by plaintiff when he fell from an examining table while a patient in defendant's office.

The following appears from depositions of the parties and various affidavits.

On 24 September 1968, plaintiff fainted while defendant was performing a biopsy on a lesion on plaintiff's back. At that time plaintiff and defendant were alone in a small room in defendant's office and plaintiff was seated on the examining table with his back to defendant. The table was from 24 to 30 inches wide and extended about 30 inches from the floor. It had "something like a three-inch pad" on top of it. Defendant caught plaintiff as he fainted, lowered him onto the table flat on his back, and permitted him to take several whiffs of ammonia. Defendant then walked about two steps to his left and replaced the ammonia in the bottom drawer of a cabinet located near the foot of the examining table. He closed the drawer and turned around to remove an instrument from a tray nearby in order to continue the biopsy. At this point plaintiff rolled off the other side of the table, fell to the floor, and sustained serious injury. Defendant tried to "grab him" but was not in a position to catch him.

Defendant did not call for the assistance of any office personnel until after plaintiff's fall. Other personnel were available.

Defendant testified at his adverse examination that in his opinion plaintiff fainted as a result of "neurogenic shock based on motor reaction." He also said that after plaintiff received the ammonia, his color returned and he stated he felt better.

However, in defendant's opinion, plaintiff was not "a hundred per cent back to normal" at that time. Plaintiff testified at his adverse examination that he remembers nothing from the time he fainted until he regained consciousness sometime later in a hospital emergency room.

Jerry West stated in an affidavit that he talked with the defendant on the day of plaintiff's fall and that defendant told him and plaintiff's wife that "he was doing a biopsy facing Mr. Brawley's back; that Mr. Brawley felt faint and that he laid him down on the examining table; that, while Mr. Brawley was apparently unconscious, Dr. Heymann turned away from him to get some additional equipment and that there was no other attendant in the examining room; that Mr. Brawley fell off on a hard floor striking a stool and a foot-step on the way to the floor."

Affidavits were received from two physicians specializing in the field of neurosurgery. Each physician stated that he had read the transcript of defendant's deposition and was of the opinion that the procedures which defendant testified he used before and after plaintiff's fainting spell were reasonable and in accordance with approved and accepted practice in the community.

*White and Crumpler by James G. White and Michael J. Lewis for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson by R. M. Stockton, Jr., and Womble, Carlyle, Sandridge & Rice by Allan R. Gitter for defendant appellee.*

GRAHAM, Judge.

The party moving for summary judgment has the burden of positively and clearly showing that there is no genuine issue as to any material fact. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400. The court must view the record in the light most favorable to the party opposing the motion, *Patterson v. Reid,* 10 N.C. App. 22, 178 S.E. 2d 1, and any doubt as to whether a triable issue exists must be resolved in his favor. *Miller v. Snipes,* 12 N.C. App. 342, 183 S.E. 2d 270, *cert. denied,* 279 N.C. 619. Summary judgment will not usually be feasible in a negligence case where the standard of the prudent man must

be applied. *Robinson v. McMahan,* 11 N.C. App. 275, 181 S.E. 2d 147, *cert. denied,* 279 N.C. 395.

Upon considering the record in this case in the light most favorable to plaintiff, we are of the opinion, and so hold, that a genuine issue exists as to defendant's actionable negligence. It is true that plaintiff offered no evidence to rebut defendant's affirmative showing that he possesses the degree of professional learning, skill and ability which others similarly situated possess and that he exercised care and diligence in performing the biopsy, which is a simple surgical procedure. Defendant's duty to plaintiff did not end, however, with the successful performance of the surgical procedure. He remained under a duty to give, or see that plaintiff was given, such care as the necessity of the case required. *Starnes v. Taylor,* 272 N.C. 386, 158 S.E. 2d 339; *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356.

The evidence would permit a jury to find that defendant unnecessarily left plaintiff unsecured and unattended on a narrow examining table at a time when plaintiff had not fully regained consciousness after suffering neurogenic shock and fainting; that it was reasonably foreseeable that a person in plaintiff's condition was likely to fall from the table unless secured or attended, and that plaintiff did fall and sustain injuries. A jury could reasonably conclude from such findings that defendant failed to give, or see that plaintiff was given, such care as a reasonably prudent physician in the same or similar circumstances would have provided, and that this negligence was a proximate cause of plaintiff's injuries.

Defendant points to the affidavits of the neurosurgeons and calls attention to plaintiff's failure to offer testimony of any physician to rebut the opinions expressed in these affidavits. In doing so, defendant treats this as the type of medical malpractice case which involves matters peculiarly within the domain of expert scientific knowledge. We do not view it as such. Laymen are not so lacking in common knowledge and experience as to be unable to pass upon the questions of reasonable care and proximate cause which arise from the facts here involved. See *Groce v. Myers,* 224 N.C. 165, 29 S.E. 2d 553.

Reversed.

Judges PARKER and VAUGHN concur.