JANET CHRISTINE McPHERSON v. GUY T. ELLIS

No. 8028SC861

(Filed 18 August 1981)

**1. Physicians, Surgeons and Allied Professions § 17.1— duty to warn patient of risks**

   If there is some danger peculiar to a surgical procedure of which the patient is not aware, it is the duty of the physician to warn the patient of this danger; but if the likelihood of some adverse result is relatively slight, much must be left to the discretion of the physician or surgeon in determining what he should tell his patient as to adverse consequences.

**2. Physicians, Surgeons and Allied Professions § 17.1— arteriogram—failure to warn patient of possible paralysis**

   A jury question was raised as to whether the standard of medical care in Asheville required defendant to inform plaintiff of the possibility of paralysis resulting from an arteriogram, and the trial court was correct in so charging the jury.

**3. Physicians, Surgeons and Allied Professions § 17.1— failure to inform patient of risks—patient election to undergo procedure**

   In a medical malpractice action where plaintiff alleged that defendants failed to inform her of the risks involved in undergoing an arteriogram, the trial court did not err in charging the jury that, even if defendants did fail to inform plaintiff of the risks of paralysis, she would not be entitled to recover were they to find that, had she been so informed, she would have consented to the procedure in any event.

APPEAL by plaintiff from *Thornburg, Judge.* Judgment entered 11 February 1980 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 31 March 1981.

Plaintiff has appealed from an adverse jury verdict in an action for medical malpractice. She brought this action against Dr. John Ledbetter, a neurologist, and Dr. Guy T. Ellis, a radiologist, alleging that they had failed to warn her of the risk of paralysis before obtaining her consent to perform an arteriogram. Plaintiff's evidence tended to show that she first went to Dr. Ledbetter in 1968 suffering from headaches and convulsions and that she was treated by him until 1975 during which time the headaches continued. In 1975 Dr. Ledbetter referred her to Dr. Ellis for the purpose of having an arteriogram performed. The plaintiff was partially paralyzed as a result of the arteriogram.

Dr. Ledbetter was called by the plaintiff as a witness and testified that "he never used the term paralysis in explaining the risks" of the procedure and that paralysis is a remote risk in the performance of an arteriogram. The depositions of several physicians were put in evidence. Dr. Stanley Hersh Appel testified by deposition that in order to comply with the standard of practice in Asheville and similar communities in 1975, both defendants should have informed the plaintiff of the risk of paralysis from an arteriogram. Dr. James Francis Toole testified by deposition that acceptable medical practice requires a "full and complete explanation of the risks."

The defendant Ledbetter offered as evidence the testimony of several physicians. Dr. Millard F. McKeel testified that, in his opinion, it was the duty of the radiologist and not Dr. Ledbetter to inform the patient of the risks involved in an arteriogram. He also testified that in his opinion "paralysis was a known risk of an arteriogram, but a rare occurrence." Dr. Tom Kennedy testified: "The risks [sic] of paralysis is a very rare risk in an arteriogram, 1 in 500, are the figures that he uses." Dr. Nelson Richards testified in part as follows:

"In his experience, frequently when the radiologist or the neurosurgeon gets through explaining all the horrible details of what can happen, the patient is fairly emotionally destroyed, and it has happened that one must go back and see the patient and try to placate this. He personally thought it was unkind, the amount of explanation they have to give people when they're talking less than one percentiles. And it is the doctor's judgment that they may have to withhold some things from the patient. Because he doesn't think it's fair to some people who are terribly ill and have a very dangerous thing going on in their head to scare the daylights out of them when you're trying to help them. And frequently this does happen. When the radiologist explains everything to them, you have to go back and say: well, I understand all that, but the need for the test is greater than those risks; if you have a blood clot in your head that has to come out to save your life and keep you from getting paralyzed; we know that's a progressive disease most of the time; we should take this risk whatever it may be."

Dr. Ledbetter testified in his own behalf and called the defendant Dr. Guy T. Ellis as a witness. Dr. Ellis did not offer evidence.

The jury answered the issues favorably to both defendants, and the plaintiff appealed as to Dr. Ellis.

*Wade and Carmichael, by J. J. Wade, Jr. and R. C. Carmichael, Jr., for plaintiff appellant.*

*Harrell and Leake, by Larry Leake, for defendant appellee.*

WEBB, Judge.

[1] The appellate courts of this state have dealt with the duty of a physician to properly inform a patient of the risks of a surgical procedure in several cases. *See Starnes v. Taylor,* 272 N.C. 386, 158 S.E. 2d 339 (1968); *Brigham v. Hicks,* 44 N.C. App. 152, 260 S.E. 2d 435 (1979); *Butler v. Berkeley,* 25 N.C. App. 325, 213 S.E. 2d 571 (1975). If there is some danger peculiar to a surgical procedure of which the patient is not aware, it is the duty of the physician to warn the patient of this danger. If the likelihood of some adverse result is relatively slight, much must be left to the discretion of the physician or surgeon in determining what he should tell his patient as to adverse consequences.

[2] Plaintiff has brought forward five assignments of error, each of which pertains to the charge. He first contends the court erred in charging the jury that if they found the risk of paralysis is remote and unlikely as a result of the arteriogram and informing the plaintiff of such a risk would not have been required under the existing standard of medical care in Asheville, there would not have been a duty to disclose to the plaintiff the possibility of paralysis. The plaintiff contends this was error because all the evidence is that it was the duty of the physician to inform the plaintiff of the risk of paralysis. In *Brigham v. Hicks, supra,* we declined to pass on the question of whether expert medical testimony is required to establish the extent of a physician's duty to inform patients of the risks of proposed treatment. In the case sub judice, several medical experts testified it was the duty of one or both of the defendants to inform the plaintiff of the risk of paralysis. No medical expert testified it was not the duty of either defendant to so warn the plaintiff. There was substantial expert testimony that the chance of paralysis from an arterio-

gram was remote. Dr. Kennedy testified the chance of paralysis in this situation was 1 in 500. Dr. Richards testified as to the disadvantage of the amount of explanation that must be made to a patient. All of the medical experts did not testify the standard of medical care in Asheville requires a physician to inform a patient of the possibility of paralysis as a result of an arteriorgram. We believe with this information laymen are capable of determining whether good medical practice requires a physician to inform his patient of the possibility of paralysis as a result of an arteriogram. *See* 1 Stansbury's N.C. Evidence § 132 (Brandis rev. 1973) for the rule as to the necessity for expert testimony when the jury is not as capable of forming an opinion as the witness. *See also* 52 A.L.R. 3d 1084 as to how other jurisdictions have dealt with the problem of requiring expert medical testimony on the question of requiring that a patient be informed of the risks of a medical procedure. In this case the jury did not have to believe the experts. We hold it was a jury question as to whether the standard of medical care in Asheville required the defendant to inform the plaintiff of the possibility of paralysis resulting from the arteriogram. The court was correct in so charging the jury.

In her second assignment of error the plaintiff contends the court erred in instructing the jury that they could find defendant was not negligent if they found Dr. Ledbetter had the sole responsibility of advising plaintiff of the risk of paralysis. She contends there was no evidence to support this portion of the charge. Plaintiff offered into evidence the deposition of Dr. Appel in which he stated:

"[I]t was the duty of the defendant Dr. Ledbetter . . . to explain to the plaintiff the risk of paralysis . . . .

\* \* \*

In the case of a patient undergoing an arteriogram, the Neurologist is the responsible attending physician [whose responsibility it is] . . . to explain the normal risks of an arteriogram or angiogram, such as paralysis."

This testimony supported the instruction to the jury.

[3] In her third assignment of error the plaintiff contends the court improperly charged the jury that, even if the defendants

had not informed the plaintiff of risks of paralysis, she would not be entitled to recover were they to find that had she been so informed she would have consented thereto in any event. We believe this instruction was correct. The burden was on the plaintiff to prove that the defendant was negligent in not properly informing the plaintiff of the risks involved in the procedure and that this negligence was a proximate cause of the injury. If the plaintiff would have undergone the procedure after being properly informed, the failure to so inform would not be a proximate cause of the injury. We believe the evidence of the slight danger of paralysis, combined with the serious condition of the plaintiff, was evidence from which the jury could have concluded the plaintiff would have proceeded with the procedure whether or not she was properly informed.

We have examined the plaintiff's remaining assignments of error and find them to be without merit.

No error.

Judges HEDRICK and ARNOLD concur.