LOU S. NELSON v. SIMMONS I. PATRICK; JOHN E. FLOURNOY; GWEN-
DOLYN S. ROMBOLD AND KINSTON RADIOLOGICAL ASSOCIATES, P.A.

No. 843SC465

(Filed 19 February 1985)

1. Physicians, Surgeons, and Allied Professions § 11.1— medical malpractice—
standard of practice in similar community

In a medical malpractice action against radiologists who practiced in
Kinston, the trial court did not err in allowing plaintiff's expert witness to
testify about the standard of medical care and acceptable practice in Chapel
Hill where evidence had been admitted showing that Chapel Hill and Kinston
were similar communities with respect to the standards of practice among
radiologists.

2. Physicians, Surgeons, and Allied Professions § 15.1— medical testimony—ex-
tent of damage

The trial court did not err in permitting plaintiff's referring gynecologist
to testify that the bowel damage suffered by plaintiff from radiation therapy
was greater than any he had seen.

3. Physicians, Surgeons, and Allied Professions § 15; Witnesses § 6.2— malprac-
tice action—character evidence inadmissible

In a medical malpractice action based on alleged negligence in failing to
obtain plaintiff's informed consent to radiation therapy, the trial court proper-
ly refused to permit defense counsel to ask plaintiff's referring gynecologist
about a notation in plaintiff's medical records that plaintiff had asked him not
to tell her husband that she had been taking birth control pills since the only
relevance of the excluded evidence was to suggest that plaintiff was of bad
character.

1

**4. Appeal and Error § 49— exclusion of evidence—evidence of same import thereafter admitted**

The exclusion of testimony is not prejudicial when the same witness is thereafter allowed to testify to the same import or testifies to facts with substantially the same meaning.

**5. Trial § 16— allowance of motion to strike—failure to instruct the jury to disregard testimony**

Although the better procedure, upon allowing a motion to strike, is for the court to instruct the jury to disregard the witness's answer immediately after allowing the motion, the failure to do so was not prejudicial in this case where defense counsel's objection and motion to strike were promptly sustained in the presence of the jury, and the jury could only have interpreted the ruling as meaning that the answer was not to be regarded as evidence in the case.

**6. Partnership § 5— professional corporation—liability of partner for torts**

As a partner in defendant professional corporation, defendant physician could be held jointly and severally liable for any negligence of his partner which occurred during the course of the corporation's business, and he could be made a party to an action based on such negligence.

**7. Physicians, Surgeons, and Allied Professions § 15.1— radiation therapy—basis for opinion—exclusion of testimony—absence of prejudice**

Where the issue in a medical malpractice case was not whether defendant was negligent in recommending that plaintiff have radiation therapy but was whether he was negligent in failing properly to inform plaintiff about the therapy and its risks, the relevance of evidence purportedly relied on by defendant in formulating his opinion as to the advisability of radiation therapy for plaintiff was questionable at best, and any error in the exclusion of such evidence was harmless.

**8. Physicians, Surgeons, and Allied Professions § 17.1— medical malpractice—lack of informed consent—submission of general negligence issue**

The trial court in a medical malpractice action based on lack of informed consent did not err in submitting a general issue as to whether plaintiff was injured by the negligence of defendant where the trial court carefully and properly instructed the jury to determine the issues submitted on the basis of whether plaintiff gave her informed consent, within the meaning of the law as applied to this case, to the treatment rendered.

**9. Damages § 3.5; Physicians, Surgeons, and Allied Professions § 21— medical malpractice—housewife—loss of future earning capacity**

The plaintiff in a medical malpractice case was not deprived of the right to recover damages for loss of future earning capacity simply because she was a housewife and was not engaged in any particular employment at the time of her injury.

**10. Physicians, Surgeons, and Allied Professions § 17.1— informed consent—discretion of physician—common law rule no longer applicable**

While a physician's discretion may be relevant in determining what information is customarily provided, failure to inform of certain risks because the physician determines that the need to know is outweighed by the anxiety the disclosure might cause will no longer shield the physician from liability if the information customarily would be provided by other physicians, or if a reasonable person would need to be informed of those risks to have a general understanding of the procedure and its inherent hazards. G.S. 90-21.13.

**11. Physicians, Surgeons, and Allied Professions § 20.2— medical malpractice—lack of informed consent—failure to instruct on alternative basis—harmless error**

In a medical malpractice case in which the trial court instructed that plaintiff could prove that defendant did not obtain her informed consent to radiation treatment by showing that he failed to provide information which would permit a reasonable person to have a general understanding of the proposed treatment and of the usual and most frequent risks and hazards inherent in the treatment, G.S. 90-21.13(a)(2), the trial court's failure to instruct that plaintiff could also prove lack of informed consent by showing that defendant failed to provide such information about the radiation treatment and its inherent risks as was customarily provided by other therapeutic radiologists in Kinston and similar communities, G.S. 90-21.13(a)(1), was error favorable to defendant and did not justify setting aside the verdict for plaintiff.

**12. Trial § 13— permitting jury to view exhibits in courtroom**

While it is error to permit the jury to take exhibits into the jury room and to retain them during deliberations without the consent of the parties, it is not error for the trial court to permit the jury to view exhibits in the courtroom in its presence and in the presence of the parties.

APPEAL by defendants from *Bruce, Judge.* Judgment entered 20 May 1983 in Superior Court, PITT County. Heard in the Court of Appeals 8 January 1985.

This is a medical malpractice action in which plaintiff alleged that the individual defendants were negligent in administration of radiation therapy to her and in failing to obtain her informed consent to the therapy. In October 1976 plaintiff underwent a total abdominal hysterectomy. Examination of the tissue removed revealed cancerous cells. Plaintiff's gynecologist, Dr. Satterfield, recommended that plaintiff undergo radiation therapy to reduce the risk of a recurrence or persistence of the cancer, and referred her to defendants for the therapy. As a result of radiation treatments administered by defendants, plaintiff suffered severe damage to her intestines.

At the first trial plaintiff voluntarily dismissed her claim based on alleged negligence in administering the therapy. On motion of defendants, plaintiff's remaining claim based on failure to obtain her informed consent was dismissed as barred by the one year statute of limitations for a battery. This Court reversed, finding that the three year statute of limitations for negligence applied and that the action thus was not time barred. *Nelson v. Patrick*, 58 N.C. App. 546, 293 S.E. 2d 829 (1982).

Upon retrial plaintiff voluntarily dismissed her claim against defendant Rombold. Following a jury verdict for plaintiff, the remaining defendants appealed from the judgment entered.

*Narron, Holdford, Babb, Harrison and Rhodes, by William H. Holdford and James C. Lanier, Jr., for plaintiff appellee.*

*Smith, Anderson, Blount, Dorsett, Mitchell and Jernigan, by Timothy P. Lehan and James D. Blount, Jr., for defendant appellants.*

WHICHARD, Judge.

[1] Defendants contend the court erred in allowing plaintiff's expert witness, Dr. Montana, to testify about the standard of medical care and acceptable practice in Chapel Hill. They argue that no evidence showed that Chapel Hill was a community similar to Kinston, where defendants practiced, and that therefore Dr. Montana's testimony was irrelevant and its admission was prejudicial.

Plaintiff's first evidence was the following sworn testimony of defendant Patrick from his deposition:

Q. To your knowledge, Dr. Patrick, in November, 1976, in those communities which have been named, that is to say, Wilson, Greenville, Rocky Mount, Goldsboro, New Bern, Jacksonville, Wilmington, Fayetteville, Raleigh, Durham and Chapel Hill, was there any difference in the standards of practice in the different communities?

A. To what extent are you talking about standards?

Q. I assume that you have standards in your profession?

A. Yes, sir.

Q. And attempt to adhere to as acceptable medical practices?

A. I wouldn't think there is any difference in what is accepted as accepted medical practice.

Q. Of the communities which have been named, which of them do you consider communities similar to Kinston as far as the standard of medical care?

A. Is this overall medical care?

Q. In your particular field?

A. In my field?

Q. Of therapeutic radiology?

A. New Bern. Goldsboro. Of course, the teaching institutions, and Wilmington.

Q. By teaching institutions, you're referring to the University of North Carolina Medical School and Duke University Medical Center?

A. Yes, sir.

This testimony, admitted without objection, was sufficient to show that Chapel Hill and Kinston were similar communities with respect to the standards of practice among therapeutic radiologists in November 1976 when the alleged negligence occurred. Since evidence had been admitted showing that the two communities were similar, evidence concerning the standards of medical practice in Chapel Hill among members of the same health care profession as defendants in November 1976 was clearly relevant. *See* G.S. 90-21.13(a). Defendant Patrick testified that he was a board certified radiologist practicing therapeutic radiology. Dr. Montana, who was accepted as a medical expert specializing in therapeutic radiology, testified specifically about the standards of practice among board certified radiologists practicing therapeutic radiology in Chapel Hill in 1976; therefore, his testimony was relevant and was properly allowed.

[2] Defendants contend the court erred in allowing plaintiff's referring gynecologist, Dr. Satterfield, who testified that he had seen only a few cases of bowel damage caused by radiation, to

testify further that the bowel damage plaintiff suffered was greater than any he had seen. They argue that the probative value of this testimony was outweighed by its prejudicial effect. We find the testimony relevant to show the extent to which plaintiff was damaged by the radiation treatments. "Relevant evidence will not be excluded simply because it may tend to prejudice the opponent or excite sympathy for the cause of the party who offers it." 1 H. Brandis, North Carolina Evidence, Sec. 80 at 294 (2d rev. ed. 1982).

[3] Defendants contend the court erred in refusing to permit defense counsel to ask Dr. Satterfield about a notation in his medical records concerning plaintiff's first visit with him. The notation indicated that plaintiff had asked him not to tell her husband that she had been taking birth control pills. The only relevance of the excluded evidence was to suggest that plaintiff was of bad character. Evidence of the bad character of a party to a civil action is generally inadmissible. 1 H. Brandis, North Carolina Evidence, Sec. 103 at 385 (2d rev. ed. 1982). The court thus properly excluded this evidence.

[4] Defendants contend the court erred in refusing to allow Dr. Satterfield to testify about the advice he was given by a cancer specialist whom he had consulted. While no offer of proof shows specifically what his testimony would have been, it appears that it would have shown that he consulted a cancer specialist who advised that plaintiff have radiation treatment.

The exclusion of testimony is not prejudicial when the same witness is thereafter allowed to testify to the same import or testifies to facts with substantially the same meaning. *Terrell v. Insurance Co.*, 269 N.C. 259, 262-63, 152 S.E. 2d 196, 199 (1967); *Rhyne v. O'Brien*, 54 N.C. App. 621, 623, 284 S.E. 2d 122, 123 (1981). Dr. Satterfield was permitted to testify that he had consulted a physician who specialized in the treatment of cancer in female organs before recommending that plaintiff undergo radiation therapy, and to explain fully the basis for his recommendation to plaintiff. Further, Dr. Satterfield's testimony indicates that he relied on the specialist's advice in deciding upon plaintiff's course of treatment. Dr. Satterfield thus testified to substantially the same import as the excluded evidence; therefore, the error, if any, was harmless. Since defendants failed to offer proof showing

that, if permitted, Dr. Satterfield would have testified in greater detail about the advice given him by the specialist, we are unable to determine whether the error, if any, in excluding that additional testimony was prejudicial. *See Currence v. Hardin*, 296 N.C. 95, 100, 249 S.E. 2d 387, 390 (1978). This assignment of error is overruled.

Defendants contend the court erred in refusing to permit Dr. Satterfield to answer the following question on cross-examination:

> And is it not true that in view of Mrs. Nelson's condition as you observed it as her attending gynecologist, even though you knew of those risks and hazards [of the radiation therapy], that you felt it was worth those to be sure as you possibly could of getting rid of the cancer completely?

They argue that the court thereby erroneously refused to allow Dr. Satterfield to explain the basis for his opinion that the best course of treatment was radiation therapy.

As stated previously, however, the court allowed Dr. Satterfield to explain fully the basis for his recommendation to plaintiff. Additionally, Dr. Satterfield was permitted to testify that he was aware of the hazards and risks of radiation therapy and that it was his firm and strong recommendation that plaintiff undergo the therapy. Therefore, Dr. Satterfield was allowed to testify to the same import as the excluded answer. *See Terrell*, 269 N.C. at 262-63, 152 S.E. 2d at 199; *Rhyne*, 54 N.C. App. at 623, 284 S.E. 2d at 123. We thus find this assignment of error without merit.

[5] Defendants' next two assignments of error relate to plaintiff's response to the following question by her counsel: "Mrs. Nelson, if you had not been subjected to the radiation treatments you still would not have cancer?" Immediately prior to this question, plaintiff testified on cross-examination that as far as she knew she did not presently have cancer. To clarify that plaintiff's cancer-free condition was as likely due to statistical probabilities as to the radiation treatments, her counsel asked the above question. Defense counsel's objection to form was overruled and plaintiff was permitted to answer that as far as she knew she would not have cancer. Defendants contend it was error to permit plaintiff to answer the question because it called for speculation. We find the error, if any, harmless.

When plaintiff attempted to explain her answer, defense counsel again objected and the court instructed plaintiff to testify only to those matters that were within her personal observations. Plaintiff's counsel then asked plaintiff the same question a second time. Plaintiff answered, but before she finished defense counsel objected and moved to strike the whole answer. The court sustained the objection and the trial proceeded. Defendants assign as error the failure to instruct the jury to disregard plaintiff's answer.

Although the better procedure, upon allowing a motion to strike, is for the court to instruct the jury to disregard the witness' answer immediately after allowing the motion, *see State v. Franks*, 300 N.C. 1, 13, 265 S.E. 2d 177, 184 (1980), the failure to do so here was not prejudicial. Since defense counsel's objection and motion to strike were promptly sustained in the presence of the jury, the jury could only have interpreted the ruling as meaning that the answer was not to be regarded as evidence in the case. *See Moore v. Insurance Co.*, 266 N.C. 440, 450, 146 S.E. 2d 492, 500 (1966); *Vandiver v. Vandiver*, 50 N.C. App. 319, 323, 274 S.E. 2d 243, 246 (1981), *disc. rev. denied*, 302 N.C. 634, 280 S.E. 2d 449 (1981).

[6] Defendants contend the court erred in denying the motion by defendant Flournoy for a directed verdict on the ground that there was no evidence of negligence on his part. In ruling on the motion, the court stated:

> As to the defendant John Flournoy, the Court finds that there is no evidence of any act of negligence on his part and that there is no genuine issue as to partnership of Flournoy and Patrick, and that the jury will be instructed at the appropriate time that any negligence or damages for which Dr. Patrick is liable as a matter of law, that Flournoy will be liable as a matter of law, jointly and severally on those damages; and that Kinston Radiological Associates, P.A. will be liable for any damages proximately caused by the negligence of Patrick.

A professional corporation is liable to the same extent as if it were a partnership. G.S. 55B-9; *Zimmerman v. Hogg & Allen*, 22 N.C. App. 544, 546, 207 S.E. 2d 267, 269 (1974), *rev'd on other grounds*, 286 N.C. 24, 209 S.E. 2d 795 (1974). As a partner in

defendant professional corporation, defendant Flournoy could be held jointly and severally liable for any negligence of his partner, defendant Patrick, which occurred during the course of the corporation's business, and he could be made a party to the action. *See Dwiggins v. Bus Co.*, 230 N.C. 234, 237-39, 52 S.E. 2d 892, 894-95 (1949). The court clearly indicated in its ruling and instructions that this was the basis of any liability on the part of defendant Flournoy. This assignment of error is thus overruled.

[7]　Defendants contend the court erred in excluding those parts of defendant Patrick's medical file on plaintiff which read, "Dr. Satterfield has contacted the doctors at Chapel Hill who believe the patient should receive cobalt radiation" and "Awaiting report, Dr. Fowler. Re: CA." Defendants indicate that the latter quotation refers to the fact that Dr. Satterfield was awaiting a report from the cancer specialist regarding plaintiff's condition. They argue that the excluded evidence was relevant because defendant Patrick relied on it in formulating his opinion as to the advisability of radiation therapy for plaintiff.

The issue, however, was not whether defendant Patrick was negligent in recommending that plaintiff have the radiation therapy but whether he was negligent in failing properly to inform her about the therapy and its attendant risks. The relevance and admissibility of the excluded evidence is thus at best questionable. Assuming error, *arguendo*, we find it harmless.

[8]　Defendants contend the court erred in formulating the issue of negligence too generally. The court submitted the issue: "Was the plaintiff . . . injured by the negligence of the defendant, Simmons I. Patrick?" It denied defendants' request that the issue be stated more narrowly by adding "in failing to inform or in failing to obtain her informed consent."

The form, number and phraseology of the issues rest within the sound discretion of the trial court. *Chalmers v. Womack*, 269 N.C. 433, 435-36, 152 S.E. 2d 505, 507 (1967); *Johnson v. Lamb*, 273 N.C. 701, 706, 161 S.E. 2d 131, 136 (1968). The court here carefully and properly instructed the jury to determine the issue submitted on the basis of whether plaintiff gave her informed consent, within the meaning of the law as applied to this case, to the treatment rendered. Considering the issue in light of the instructions, we do

not believe defendants were prejudiced by its form. We thus find no abuse of discretion in the phrasing of the issue.

[9] Defendants contend the court erred in instructing on plaintiff's loss of future earning capacity when at the time of the alleged negligence plaintiff was a housewife and had not been employed outside the home for approximately fifteen years. Despite defendants' assertions to the contrary, the allegations and the evidence were sufficient to warrant the instruction. Plaintiff was not deprived of the right to recover damages for loss of earning capacity simply because she was not engaged in any particular employment at the time of the injury. *Johnson v. Lewis,* 251 N.C. 797, 802, 112 S.E. 2d 512, 516 (1960). "The fact that a woman attends merely to household duties will not deprive her of a right to recover for loss of earning capacity." *Id.* at 802-03, 112 S.E. 2d at 516.

[10] Defendants contend the court erred in refusing requested instructions based on case law decided prior to the effective date of G.S. 90-21.13, the informed consent statute. They maintain that enactment of G.S. 90-21.13 was not intended to supersede the common law in the area of informed consent.

G.S. 90-21.13, in relevant part, provides as follows:

(a) No recovery shall be allowed against any health care provider upon the grounds that the health care treatment was rendered without the informed consent of the patient . . . where:

(1) The action of the health care provider in obtaining the consent of the patient . . . was in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities; and

(2) A reasonable person, from the information provided by the health care provider under the circumstances, would have a general understanding of the procedures or treatments and of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments which are recognized and followed by other health care providers engaged in the same field of practice in the same or similar communities; or

(3) A reasonable person, under all the surrounding circumstances, would have undergone such treatment or procedure had he been advised by the health care provider in accordance with the provisions of subdivisions (1) and (2) of this subsection.

Thus the health care provider must provide such information about the treatments or procedures and their inherent hazards and risks as is customarily provided by other members of the same health care profession with similar training and experience situated in the same or similar communities, see G.S. 90-21.13 (a)(1), and provide information which would permit a reasonable person to "have a general understanding of the procedures or treatments and of the usual and most frequent risks and hazards inherent in the proposed procedures or treatments," see G.S. 90-21.13(a)(2). See also Byrd, The North Carolina Medical Malpractice Statute, 62 N.C. L. Rev. 711, 738 (1984). The provider may not be held liable, however, if a reasonable person, under the surrounding circumstances, would have undergone the treatment or procedure had he or she been advised in accordance with G.S. 90-21.13(a)(1) and (2). G.S. 90-21.13(a)(3).

Under the common law, by contrast, much was left to the physician's discretion in determining what the patient should be told about possible adverse consequences of a procedure or treatment, particularly when the likelihood of an adverse consequence was relatively slight. See Starnes v. Taylor, 272 N.C. 386, 392-93, 158 S.E. 2d 339, 344 (1968); Watson v. Clutts, 262 N.C. 153, 159-60, 136 S.E. 2d 617, 621 (1964). As our Supreme Court stated in Watson at 159, 136 S.E. 2d at 621, "[t]he doctor's primary duty is to do what is best for the patient. Any conflict between this duty and that of a frightening disclosure ordinarily should be resolved in favor of the primary duty." Advice calculated to increase the patient's anxiety by recounting unlikely possibilities of undesirable consequences was viewed as inconsistent with the physician's duty to the patient. Starnes v. Taylor, 272 N.C. at 393, 158 S.E. 2d at 344.

The continued authority of these cases is doubtful. Byrd, supra, at 739. Whether the physician properly exercised discretion in deciding not to inform a patient of certain adverse consequences of a procedure or treatment is no longer the controlling

consideration. While a physician's discretion may be relevant in determining what information is customarily provided, failure to inform of certain risks because the physician determines that the need to know is outweighed by the anxiety the disclosure might cause will no longer shield the physician from liability if the information customarily would be provided by other physicians, or if a reasonable person would need to be informed of those risks to have a general understanding of the procedure and its inherent hazards. We conclude that the case law on which defendants' requested instructions were based is inconsistent with the language and purpose of G.S. 90-21.13, and that the court therefore properly refused to give the instructions.

[11]  Defendants contend the court erred by not instructing the jury consistent with G.S. 90-21.13. In addition to the instructions based on the common law of informed consent, defendants submitted proposed instructions which closely tracked N.C.P.I. — Civil 809.45, which is modeled after G.S. 90-21.13. Because there was no question that plaintiff consented to the treatments, the court concluded there was no question for the jury as to whether the action of defendants in obtaining plaintiff's consent was in accordance with the standards of practice among other board certified therapeutic radiologists situated in the same or similar communities. It therefore refused to give that part of the proposed instructions which tracked G.S. 90-21.13(a)(1).

The court properly instructed that one of the things plaintiff had to prove in order to prevail was that defendant Patrick did not obtain plaintiff's informed consent to the treatments. The court then instructed as follows:

> In order to prove . . . that the defendant did not obtain the plaintiff's informed consent, the plaintiff must prove that the defendant failed to provide information to the plaintiff which would, under the same or similar circumstances, have given a reasonable person a general understanding of the procedures and treatments to be used and the usual and most frequent risks and hazards inherent in the treatments as recognized by other therapeutic radiologists in the same or similar communities.

This was a correct statement of the law as set forth in G.S. 90-21.13(a)(2). The court erred, however, in not instructing that

plaintiff could prove that defendant Patrick did not obtain her informed consent by proving that he failed to provide such information about the radiation treatment and its inherent hazards and risks as was customarily provided by other therapeutic radiologists in Kinston or similar communities. *See* G.S. 90-21.13(a)(1). The court should have instructed that plaintiff could prove that defendant Patrick did not obtain her informed consent by showing either that he failed to comply with G.S. 90-21.13(a)(1) or that he failed to comply with G.S. 90-21.13(a)(2).

By failing to provide the jury with an alternative basis on which to find for plaintiff, however, the court erred in defendants' favor. To have a judgment set aside, defendants must show not only that the court erred, but also that the error was material and prejudicial and that a different result likely would have ensued but for the error. *Glenn v. Raleigh,* 248 N.C. 378, 383, 103 S.E. 2d 482, 487 (1958). No such showing has been made. We thus find the error harmless.

[12] Defendants finally contend the court erred in permitting the jury, over objection, to review plaintiff's medical bills. During their deliberations the jurors asked whether they could see these bills. The court inquired whether defendants objected to sending the bills to the jury room. Defendants did and the court sustained the objection. The court then ruled in its discretion that the jurors should be returned to the courtroom and the evidence requested passed among them. Defendants objected but their objections were overruled. The jurors were returned to the courtroom, given precautionary instructions, and allowed to view the medical bills.

It is well established that it is error to permit the jury to take exhibits into the jury room and to retain them during deliberations without the consent of the parties. *Watson v. Davis,* 52 N.C. 178, 181 (1859); *Collins v. Realty Co.,* 49 N.C. App. 316, 321, 271 S.E. 2d 512, 515 (1980). Our Supreme Court explained the reason for the rule as follows:

The jury ought to make up their verdict upon evidence offered to their senses, *i.e.,* what they see and hear in the presence of the court, and should not be allowed to take papers, which have been received as competent evidence, into the juryroom, so as to make a comparison of hand-

writing, or draw any other inference which their imaginations may suggest, because the opposite party ought to have an opportunity to reply to any suggestion of an inference contrary to what was made in open court.

*Watson*, 52 N.C. at 181.

We find no authority, however, which prohibits the court from permitting the jury to view the exhibits in the courtroom in its presence and in the presence of the parties. In that setting, where subject to objections by the parties and supervision by the court, the viewing may aid the fact-finding process. This is statutorily permitted in criminal trials, *see* G.S. 15A-1233(a), and we see no reason for a different rule in civil trials. This assignment of error is thus overruled.

No error.

Chief Judge HEDRICK and Judge PARKER concur.