BLOUNT-MIDYETTE & COMPANY v. AEROGLIDE CORPORATION.

(Filed 19 April, 1961.)

**1. Contracts §§ 20, 25—**

    Where the contractor for the installation of machinery has exclusive possession of the realty during the progress of the work, and the building is destroyed by fire after the work had been begun, rendering the completion of the contract impossible, the burden is upon the contractor, in the owner's action to rescind the contract and recover the amount of consideration theretofore paid, to prove that the fire resulting in the

destruction of the property occurred without any fault on the part of the contractor.

**2. Evidence § 5—**

The burden of proof in any particular case depends upon the circumstances in which the claim arises.

DENNY, HIGGINS and RODMAN, JJ., concur in result.

APPEAL by defendant from *Bone, J.,* at October 1960 Special Term of BEAUFORT.

Civil action to rescind contract entered into on 2 July 1957, between plaintiff and defendant whereby the defendant Aeroglide Corporation agreed to make certain installations of machinery and equipment in, and alterations to, plaintiff's grain elevator for a price of $23,650.59.

According to the terms of the contract two-thirds of this sum was payable to the defendant on 1 August 1957. The balance was due upon completion of the work described in the contract. By the terms of the contract the defendant was to furnish all labor, materials and equipment. The contract also provided that the plaintiff close down the operations of the grain elevator and turn it over to the exclusive control of the defendant on 22 July 1957. The contract further provided that the work was to be completed on 27 August 1957, and control of the elevator returned to the plaintiff, Blount-Midyette & Company.

During the evening of 16 August, 1957, the grain elevator was completely destroyed by fire. The defendant had not completed the work specified in the contract, — the grain elevator still being in its exclusive control and possession.

Prior to the fire, and pursuant to the contract, the plaintiff had paid to the defendant $16,000.00. No payments were made thereafter.

The plaintiff, alleging failure of performance and the negligence of the defendant in causing the fire, instituted this action to have the contract rescinded and to recover of the defendant the sum of $16,000.00 had and received, less a credit of $1,200.00 for improvements not destroyed by the fire. Defendant's demurrer to the complaint was overruled and the defendant answered, pleading impossibility of performance, substantial performance, and set up a counterclaim for $7,497.03 for the value of its performance to the date of the fire.

Defendant's motions for nonsuit at the close of the plaintiff's evi-

dence and at the end of all the evidence were denied, and the presiding judge submitted three issues to the jury:

"1. Was the grain elevator referred to in the pleadings destroyed by fire without fault on the part of the defendant, as alleged in the answer?

"2. Is the plaintiff entitled to rescind the contract referred to in the pleadings and to recover of the defendant the $14,800.00 already paid thereon, as alleged in the complaint?

"3. What amount, if any, is defendant entitled to recover of the plaintiff on the counterclaim set up in the answer?"

The jury answered the first issue "No", the second "Yes", and the third "'None". To judgment entered in accordance therewith, the defendant excepts and appeals to the Supreme Court, and assigns error.

*Carter & Ross, Teague, Johnson & Patterson for plaintiff appellee.*
*Robert E. Long, Rodman & Rodman for defendant appellant.*

WINBORNE, C.J. The determinative question on appeal in this case is whether or not the trial court correctly instructed the jury as to the burden of proof. The defendant appellant contends that once the frustrating event causing impossibility of performance is proved, the onus is upon the plaintiff to establish negligence on the part of the defendant as would deprive the latter of its right to rely upon the defense. The plaintiff appellee, on the other hand, contends that the plea of impossibility of performance does not suffice to excuse the defendant from having to pay damages for nonperformance unless it can establish affirmatively that the fire and resulting destruction of the grain elevator occurred without any fault on its part.

In this connection the court below instructed the jury in pertinent part as follows: "The court will submit to you three issues of fact in the case. The first one reads as follows: 'Was the grain elevator referred to in the pleadings destroyed by fire without fault on the part of the defendant, as alleged in the answer?'

"The burden of proof as to that issue is on the defendant Aeroglide Corporation to satisfy the jury by the greater weight of the evidence that the grain elevator referred to in the pleadings was destroyed by fire without fault on the part of the defendant as alleged in the answer * * *

"Now under the law the defendant is required to satisfy you by the greater weight of the evidence that that is true, that the destruction of the building and the removal of it from existence was accidental or at least without fault on the part of the defendant."

In contracts in which the performance depends upon the continued existence of a given thing, there is an implied condition that an impossibility of performance arising from the destruction of the thing shall excuse performance, and hence the destruction or loss of property which is the subject matter of the contract, if occurring without fault, discharges the contract or authorizes its rescission. This rule has been followed in a number of cases in both this country and England. *Taylor v. Caldwell,* 3 Best & S. 826 (1863); *Steamboat Co. v. Transportation Co.,* 166 N.C. 582, 82 S.E. 956; *Sale v. Highway Comm.,* 242 N.C. 612, 89 S.E. 2d 290.

In *Taylor v. Caldwell, supra,* a leading English case, it is said: "The authorities establish the principle that where, from the nature of the contract, it appears that the parties must from the beginning have known that it could not be fulfilled, unless, when the time for the fulfillment of the contract arrived, some particular thing continued to exist, so that, when entering into the contract, they must have contemplated such continued existence as the foundation of what was to be done, then, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, the contract becomes impossible for the perishing of the thing without the default of the contractor."

*Steamboat Co. v. Transportation Co., supra,* is a case where the plaintiff leased its steamboat to the defendant for use on Sundays and the plaintiff performed under the terms of the contract until the steamboat was destroyed by fire. Thereupon plaintiff sued defendant for use preceding the fire and the defendant counterclaimed for plaintiff's failure to provide the steamboat for the remaining period of the contract. The plaintiff pleaded impossibility of performance as a defense. *Hoke, J.,* speaking for the Court, said: "In reference to this counterclaim of defendant, it may be well to note that the obligations of an ordinary business contract are imperative in their nature. This principle, which relieves a party to such a contract by reason of the destruction of the property with which it deals, is sometimes treated as an exception; the general rule being the other way. 9 Cyc. pp 627-628-629. Before a party can avail himself of such a position, he is required to show that the property was destroyed, and without fault on his part. For this reason, and further because, by the terms of the present contract, the care and custody of the property was left with the plaintiff, if it is established that plaintiff has failed to further perform the executory features of this agreement, the burden would be on plaintiff to show that the steamer was de-

stroyed by fire and that the plaintiff and its agents were in the exercise of proper care at the time."

And in *Sale v. Highway Comm.*, *supra*, Parker, J., discusses the *Steamboat* case and adds: "In the absence of an express contract provision if the act to be performed is necessarily dependent on the continued existence of a specific thing, the destruction thereof before the performance of the act without the fault of the promisor, will excuse non-performance of the contract (citing cases). If the petitioners can allege, and prove, they have been damaged by the respondent's failure to perform any of the work it contracted to do as a part of the consideration for the right of way agreement, they can recover such damages, unless the respondent, the burden being upon it, can show that the buildings were destroyed by fire, or otherwise, and it, or its agents, were in the exercise of due care. After proof of the execution of the contract and breach by the promisor, the burden is on the promisor to show an excuse for the breach." See also *Crouse v. Vernon*, 232 N.C. 24, at 35, where it is said: "Non-performance of a valid contract is a breach thereof regardless of whether it occurs deliberately or through forgetfulness or neglect, unless the person charged (in this case the defendant) shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him."

The English rule is contra. See *Constantine Line v. Imperial Smelting Corp.* (1940) 2 All Eng. Rep. 165, where the House of Lords established the rule that the party relying on impossibility of performance does not have to prove affirmatively that the impossibility was not due to his own fault.

However, in view of the decisions of this Court we are constrained to follow, not disregard, the precedents therein laid down. Therefore, the instruction of the court below as to the burden of proof is affirmed. The burden of proof in any particular case depends upon the circumstances in which the claim arises. As pointed out hereinabove, the defendant was to have control of the building and premises from the time the performance of the contract began until it was completed. The evidence of both plaintiff and defendant is to the effect that the defendant did, in fact, have exclusive control from the time the work began until the fire.

For reasons stated in the judgment below there is

No error.

DENNY, HIGGINS & RODMAN, JJ., concur in result.