STATE OF NORTH CAROLINA v. FRANKLIN P. BARBEE

No. 7713SC103

(Filed 21 September 1977)

1. **Searches and Seizures § 4— contraband examined before search warrant issued— contraband seized pursuant to warrant— admissibility**

    In a prosecution for felonious possession of more than one ounce of marijuana, information lawfully obtained from a confidential informant and presented to the magistrate was sufficient to support the magistrate's finding of probable cause, and any violation of defendant's fourth amendment rights which may have occurred when an officer, through excess of diligence, removed marijuana from a suitcase in plain view on defendant's premises prior to obtaining the search warrant, did not so taint the entire proceedings as to require exclusion of the marijuana seized pursuant to the warrant.

2. **Criminal Law § 50— arresting officer—opinion as to guilt—evidence admissible**

    Defendant was not prejudiced where one of the arresting officers testified that he made a statement to the defendant at the time of the arrest which implied that the officer thought that defendant was guilty.

APPEAL by defendant from *McKinnon, Judge*. Judgment entered 10 September 1976 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 2 June 1977.

*Attorney General Edmisten by Associate Attorney Henry H. Burgwyn for the State.*

*Frink, Foy & Gainey by E. M. Allen III for the defendant appellant.*

PARKER, Judge.

[1]   This is an appeal from judgment imposed upon defendant's conviction for felonious possession of more than one ounce of marijuana. The principal question presented is whether the court erred in denying defendant's motion to suppress evidence concerning 42.2 pounds of marijuana found in two suitcases on defendant's premises. We find no error.

Prior to ruling on defendant's motion to suppress, the court conducted a *voir dire* examination at which the State presented evidence to show the following: On 29 February 1976 defendant owned and operated a self-service gasoline station and grocery store in Yaupon Beach. The business was conducted in a two story cinder block building located on the west side of Highway 133. The bottom story was used for the self-service gas station and grocery store, and the upper story was used for apartments. The entrance to the building was from the front, or east, end of the building which fronted on the highway. On the south side of the building there was a parking lot which was paved with asphalt halfway back on that side of the building, and the remainder of the area on the south side of the building was cleared of all growth. At the rear, or west, end of the building there was an old field, which, beginning at a point five or six feet from the rear wall of the building, sloped sharply down from the back of the building into "sort of a bay" which was grown up in high weeds and small trees.

On the afternoon of 29 February 1976 a confidential informant told Officer Folding, a County Narcotics Officer of the Brunswick County Sheriff's Department, that between 4:00 and 4:30 p.m. that day he had gone to the rear of defendant's building looking for a restroom. While so engaged, he observed two suitcases in a hole in the cinder block wall at the rear of the building. The front suitcase was partially open. The informant looked in and smelled an odor of what he believed to be marijuana. The open suitcase contained numerous packages wrapped in white plastic bags. In the informant's opinion these contained marijuana and he referred to them as "bricks" of marijuana. Officer Folding examined his informant as to his knowledge about marijuana.

After receiving the information from his informant, Officer Folding went with two other officers to the old field at the rear of defendant's store building. As he approached the building through the field and when he was 50 to 75 yards away, he could see the two suitcases in the hole in the rear wall of the building. As he got closer, he could see "a white plastic thing" sticking out of one of the suitcases, as his informant had told him he had observed. The hole in which the suitcases were lodged had been created when several cinder blocks had been removed from the wall to provide an outlet for the exhaust from the cooler in the store. Officer Folding climbed up the embankment at the rear of the building. When he was within a couple of feet of the building, he could smell the odor of what he thought to be marijuana. He looked into the partially opened suitcase and saw the plastic bags or packages which his informant had described. The plastic was not transparent and he could not see what was in the packages without opening them. He reached into the partially opened suitcase and took out one of the plastic packages, opened it, and saw a green vegetable matter that he thought to be marijuana.

Leaving the other two officers to maintain surveillance over the rear of defendant's store, Officer Folding went before a magistrate to obtain a search warrant authorizing a search of defendant's building for marijuana, swearing to the following facts in the affidavit which he presented to the magistrate to establish probable cause for issuance of the warrant:

"The affiant was contacted by a Confidential and reliable source on 2/27/76, (sic) stating that in the PM hours of 2/29/76, source was on the premises and to the rear of the building, while looking for a rest room saw (2) beige suit cases sitting in an opening in the rear wall of the building. Source went on to say that one of the suit cases was open and he believed what, he, the source knew to be marijuana wrapped in white plastic bags, what, he the source referred to as "bricks" the affiant, then went to the above described building and from the outside rear, observed the two beige suitcases with white plastic from one of the suitcases. The affiant has received information from sources of proven reliability that Franklin Pierce Barbee is involved in illegal Drug traffic and has been for some time. This informant has given affiant information in the past, which through personal observation and other proven sources has proved to be true and Correct. Due to the reliability of the in-

formant and the reputation of the suspect, I pray that this search warrant be issued."

On Officer Folding's affidavit, the magistrate issued a search warrant authorizing search of defendant's building for marijuana.

At 7:50 p.m. Officer Folding returned to the store and served the search warrant on the defendant, who was in the store at the time. The officers seized the two suitcases and subsequently determined that they contained 42.2 pounds of marijuana. Search of the interior of the building resulted in the finding of a small amount of marijuana (less than an ounce) wrapped in a paper towel in the freezer compartment of a refrigerator in one of the back rooms. Particles of marijuana were also found beneath the mats in the trunk of defendant's automobile, which was parked next to the building.

In assigning error to the court's rulings admitting evidence concerning the marijuana found on defendant's premises, defendant contends the search warrant was invalid because it was issued "upon the basis of an illegal and unreasonable prior search conducted without a warrant in violation of the Fourth Amendment." This contention requires that we examine into the lawfulness of the officers' activities prior to issuance of the search warrant and into the connection between those activities and the subsequent issuance of the warrant.

At the outset we observe that we are not here concerned with a warrantless intrusion by the police into a residential curtilage or, at least insofar as the field behind defendant's building is concerned, into any area with respect to which defendant's reasonable expectations of privacy were protected by the fourth amendment. All activities of the officers prior to obtaining the search warrant took place outside of defendant's building and in an area to which the public had unrestricted access. Defendant invited the public to patronize his business, and by maintaining a parking lot to the south of the building, he invited the public to come into that area. The spot in the rear wall of the building where the suitcases were found was but a few feet from the parking area, and there was nothing in between to hinder easy access or to indicate that defendant ever attempted in any manner to exclude the public from the area at the rear of his building. When the officers entered and passed through the old field at the rear of defendant's building and while they were still 50 to 75 yards away, they could see the suitcases in plain view. Defendant could hardly have had any reasonable expectation of privacy for items so openly displayed. Although the officers may

have been trespassers in the field, such a trespass did not, of itself, make the search illegal, and the fourth amendment does not extend to open fields. *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924).

It may be conceded that when Officer Folding reached into the open suitcase and removed and opened one of the "bricks" of marijuana, he at that point violated defendant's fourth amendment rights. It does not follow, however, that this unwarranted intrusion automatically so tainted all subsequent proceedings as to render the warrant itself and the search made pursuant thereto unlawful. So far as the record reveals, the only information presented to the magistrate to establish probable cause for issuance of the warrant was the information contained in Officer Folding's affidavit. In this, no mention was made that the officer had reached inside the suitcase or removed any of its contents. The only mention in the affidavit of anything done by the affiant is that, after receiving the information from his confidential informant, he "then went to the above described building and from the outside rear, observed the two beige suitcases with white plastic from one of the suitcases." In this, as in every case in which a search warrant is sought, the officers were under a duty to use due care to ascertain that the information presented to the magistrate to establish probable cause for the search was accurate. If by any excess of diligence in that regard Officer Folding at one point may have violated defendant's fourth amendment rights, nevertheless it does not follow that the exclusionary rule must be automatically applied. "If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted." *James v. United States*, 418 F. 2d 1150, 1152 (D.C. Cir. 1969). We agree with the comment contained in footnote 4 to the opinion in that case, that "[w]hile it is logically possible, by extending the deterrence rationale for the exclusionary rule, to argue as appellant does, that any taint in the police conduct nullified the entire investigatory process so that no warrant can issue, we think this extension goes beyond the sound limits of the deterrence philosophy." We hold that the lawfully obtained information presented to the magistrate in this case was sufficient to support the magistrate's finding of probable cause and that any violation of defendant's fourth amendment rights which may have occurred when Officer Folding, through excess of diligence, reached into the open suitcase, did not so taint the entire proceedings as to require exclusion of the evidence seized

pursuant to the warrant. Defendant's first assignment of error is overruled.

[2] Defendant's only remaining assignment of error is directed to the court's denial of defendant's motion to strike an answer given by one of the State's witnesses during direct examination. The witness, L. D. Jones, Assistant Police Chief of Yaupon Beach, testified that he was present while the search was being conducted and at that time had a conversation with defendant after defendant had been warned of his constitutional rights. Jones testified that during the conversation he asked defendant, "Why did you do it?," to which defendant responded, "You have never been broke, have you?" Jones then testified, over defendant's objection, that he responded to defendant's question by saying:

> "Yes, I have, too. I tried to work out of it through the framework of the law — within the framework of the law."

Defendant moved to strike the testimony of the witness as to this last response which he testified he had given to the defendant, and the denial of this motion is the basis for defendant's second assignment of error.

Defendant contends that the answer which the officer testified he gave to the defendant carried with it the clear implication that, in the opinion of the officer, defendant was not acting within the framework of the law. From this, defendant argues that allowing this evidence showing by implication the opinion of the officer, the province of the jury was invaded. If so, the invasion was minimal. In view of the overwhelming evidence of defendant's guilt, the jury could hardly have been influenced because one of the arresting officers testified that he made a statement to the defendant at the time of the arrest which implied that the officer thought that defendant was guilty. In the majority of criminal cases, the very act of making the arrest carries with it the same implication. We find no prejudicial error in the court's denial of the motion to strike.

In defendant's trial and in the judgment appealed from we find

No error.

Judges MORRIS and CLARK concur.