318 S.E.2d 340 (1984)
R.E. FRAVER, J. Rives Manning, Jr., J.C. Faust, Hubert Hampton Martin, William A. Pleasant, C.B. Weatherly, Jr., Jerry Holt, Lee Williams, Jimmy McElrath, Dwight Fraver, Mike Steiner, David Marion, James K. Wright, Charles T. Montjoy, Jr., William A. Davenport, Jr., Albert L. Hudson, Max K. Roberts, Ted Bright, Don R. Matthews, Lloyd Edwin Scott, and Billy Ray Staley, Plaintiffs,
William S. Kirby, Herbert M. Speas, Jr., Robert L. Dobbins, Linda G. Hamrick, Dennis L. Riley, Sr., Charles D. Todd, and Edward L. Lowder, Intervenor-Plaintiffs,
Ron Worthington, David Breeden, Peggy Horney, Harry Horney, and Walter F. Johnson, Plaintiffs,
Robert J. Womble, Intervenor-Plaintiff,
v.
NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, a corporation, Defendant.
No. 8314SC990.
Court of Appeals of North Carolina.
August 7, 1984.
*341 Powe, Porter & Alphin by Charles R. Holton, David E. Fox and Bryan E. Lessley, Durham, for plaintiffs-appellants.
Merriman, Nicholls, Crampton, Dombalis & Aldridge by W. Sidney Aldridge and Gregory B. Crampton, Broughton, Wilkins & Webb by J. Melville Broughton, Raleigh, for defendant-appellee; Robert B. Broughton, Raleigh, of counsel.
BRASWELL, Judge.
In a dispute between the insurance company and its former agents and agency managers, the plaintiffs and intervenor-plaintiffs contend that they were entitled to certain bonus renewal commissions for the year 1979 pursuant to their agent/agency manager agreements. The defendant, on the other hand, asserts that according to these agent/agency manager contracts it was not obligated to pay the bonus renewal commissions since the insurance company's loss ratio exceeded sixty-three percent in 1979. Upon the defendant's motion, the *342 trial court entered summary judgment in favor of the defendant. The plaintiffs and intervenor-plaintiffs have appealed this ruling.
Procedurally, the present controversy originally began as two lawsuits. Both suits set forth the same factual allegations but were brought by different plaintiffs. William S. Kirby, et al, were allowed to intervene in the Fraver action. Robert Womble was permitted to intervene in the Worthington suit. Pursuant to the plaintiffs' motion, the trial court consolidated the matters for hearing on the defendant's motion for summary judgment.
North Carolina Farm Bureau Mutual Insurance Company markets its insurance through independent agents. Each agent or agency manager must enter into an agent/agency manager agreement with the defendant which governs their relationship. Those agreements provide for the payment of a bonus renewal commission to the agent/agency manager if certain stated preconditions are satisfied. The Agent's Contract states:
10. Company shall pay to Agent a bonus of 2% of all his premiums, (excluding Crop Hail and Tobacco Floater) in his territory, if a production quota assigned by the Company is reached and if the Company loss ratio (annual statement to Insurance Department) for the year in question does not exceed 63% ....
This precondition is also contained in the Agency Manager's Agreement.
In 1979, the plaintiff and intervenor-plaintiffs were not paid a bonus renewal commission. The defendant contends that the commission was not paid because the company loss ratio, as reflected in its annual report to the North Carolina Department of Insurance, exceeded 63%. The defendant further asserts that, in determining whether the 63% loss ratio precondition has been met, it has consistently used (in previous years when the commission was paid as well as in 1979) the figure found on Form 2, Underwriting and Investing Investment Exhibit on page 9, line 31, column 8 of the Annual Statement to the Insurance Department. The plaintiffs and intervenor-plaintiffs contend that recoupments received by the defendant through its participation in the North Carolina Motor Vehicle Reinsurance Facility (hereinafter referred to as the Facility) for the year 1979 should be included in the loss ratio calculation which would, in turn, make the loss ratio for 1979 less than 63%.
The ultimate issue on appeal is whether the trial court properly granted the defendant's motion for summary judgment. G.S. 1A-1, Rule 56(c) states that summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The moving party has the burden of showing that no genuine issue of fact exists for trial. In rebuttal, the nonmovant must then set forth specific facts showing that a genuine issue does in fact remain. Lowe v. Bradford, 305 N.C. 366, 289 S.E.2d 363 (1982).
In support of its motion, the defendant offered the affidavit of Bobby W. Gray, Deputy Commissioner with the Technical Operations Division of the North Carolina Department of Insurance. Mr. Gray stated that he had personal knowledge of the defendant's 1979 Annual Statement filed with the insurance department, that the statement was accepted by the department as a correct presentation of the company's financial condition for the year 1979, and that no insurance company can deviate from the form furnished by the department to the insurance company for its completion and submission of its annual statement. Furthermore, he provided:
6. The requirements and policies of the North Carolina Department of Insurance would not allow the North Carolina Farm Bureau Mutual Insurance Company or any domestic insurance company to amend its 1979 annual statement based on receipt of recoupment fees received for the North Carolina Reinsurance Facility in the year 1980 regardless of the *343 policy year to which all or a portion of the recoupment fees might relate.
* * * * * *
8. The receipt of any recoupment fees from the North Carolina Reinsurance Facility... must be reflected on the annual statement for the year in which they were received by the company.
In effect, the defendant was required to add in the recoupment fees received for losses incurred in 1979 on its 1980 annual statement. Otherwise, according to Mr. Gray, a substantially less accurate loss ratio figure for the year 1979 would result. He asserted that "[t]he most accurate and complete loss ratio figure ... in the annual statement ... is contained as a part of Form 2, Underwriting and Investing Investment Exhibit on page 9, line 31, column 8." Furthermore, in his affidavit Paul L. Mize, manager of the North Carolina Reinsurance Facility, stated that no recoupment dollars were distributed to the defendant or to the Facility's other members during the 1979 calendar year. Thus, it was impossible for recoupment fees to have changed the fact that the loss ratio figure exceeded 63% since the 1979 losses recouped in 1980 had to be reported in 1980 and since there were no recoupment fees distributed in 1979 to report.
In addition to Gray's affidavit, the defendant offered the affidavit of G.D. Culp, Farm Bureau's General Manager, who was familiar with the agent/agency manager contracts and was directly involved in the formulation of the 63% loss ratio limitation. Mr. Culp stated that the company loss ratio referred to in the 63% limitation "has consistently been that loss ratio contained as a part of Form 2, ... page 9, line 31, column 8 of the annual statement to the Insurance Department." He also acknowledged that, in determining whether the 63% loss ratio limitation has been satisfied for the payment of the bonus renewal commissions, the company has used only that specified loss ratio figure "in years previous, subsequent to, and including the 1979 year."
Similarly, J.H. McMillian, the defendant's Accounting Manager, stated in his affidavit that this loss ratio figure found on Form 2, page 9, line 31, column 8 of the annual statement is the most accurate and complete loss ratio figure for an indication of the company's financial condition for any given year and is the only figure which has been used in determining whether the loss ratio has exceeded 63%. According to Mr. McMillian, "[t]he Company loss ratio as reflected in its annual statement to the North Carolina Department of Insurance exceeded sixty-three percent (63%) for the 1979 year." Thus, by the terms of the agent/agency manager agreements the company was not obligated to pay a bonus renewal commission that year.
We hold that the defendant has met its burden of showing no genuine issue of fact exists for trial. According to the terms of the plaintiffs' and plaintiff-intervenors' contracts and the accounting requirements of the Department of Insurance with regard to Facility recoupment fees, the defendant was under no obligation to pay a bonus renewal commission when its loss ratio exceeded 63% in 1979.
In rebuttal, the plaintiffs and plaintiff-intervenors contend that the establishment of the North Carolina Reinsurance Facility caused such a change of circumstances to justify the application of the frustration of purpose doctrine. We must disagree. In the first place, the doctrine of frustration of purpose operates to excuse performance of a contract, not compel performance by the other party as sued for by plaintiffs and plaintiff-intervenors in this case. Secondly, the doctrine does not apply if the parties have in their contract allocated the risk involved in the frustrating event. See Brenner v. School House, Ltd., 302 N.C. 207, 211, 274 S.E.2d 206, 209 (1981). In the present case, the loss ratio precondition was bargained for and understood. By entering into their respective agreements, the plaintiffs and plaintiff-intervenors accepted the risk that the loss ratio might exceed 63% for a given year and that their bonus renewal commissions would not be paid. In any event, the plaintiffs *344 and plaintiff-intervenors offered no evidence that the defendant's legally required association with the Reinsurance Facility affected the company loss ratio to their detriment. Although according to Charles Kralick, certified public accountant, that if the 1979 recoupment fees had been included in the annual statement the loss ratio for that year would have been below 63%, this fact is not evidence of a causal connection between the creation of the Reinsurance Facility and the 1979 loss ratio figure exceeding 63%. Their mere assertion without the presentation of other supporting evidence that the ratio loss column in the defendant's annual statement "now means something different than before the facility was created" is insufficient to rebut the defendant's showing that no genuine issue of fact remains for trial.
The plaintiffs and plaintiff-intervenors further assert that there is a genuine issue of fact as to whether the loss ratio precondition which was incorporated into many of the plaintiffs' contracts by way of amendment was supported by consideration. In support of this contention, they have offered the affidavits of two insurance agents who worked for the defendant before and after the 63% loss ratio amendment was added into their contracts in 1970. We must reject their argument on two bases. First of all, the agent/agency manager contracts were terminable at will by either party. Employment contracts which are terminable at will may be modified at any time by either party with the continuance of the relationship serving as the consideration for the modification. 56 C.J.S. Master and Servant § 9 (1948). Therefore, no additional consideration for the amendment was needed. Secondly, the plaintiffs and plaintiff-intervenors received the bonus renewal commission for every year prior to 1979. Having accepted the bonus renewal commissions after the amendment became effective, they cannot now complain that the amendment was not supported by sufficient consideration. Because the plaintiffs and plaintiff-intervenors have failed to offer sufficient evidence to rebut the defendant's showing that no genuine issue as to any material fact exists for trial, we hold that the motion for summary judgment in favor of the defendant was properly granted.
Affirmed.
ARNOLD and EAGLES, JJ., concur.