BERNIE R. BARNES, PLAINTIFF v. FORD MOTOR COMPANY, DEFENDANT

No. 8811DC1242

(Filed 5 September 1989)

1. **Contracts § 20.1 — lease of tractor — tractor destroyed by fire — no fault of lessee — contract rescinded — return of advance rent**

In an action to recover a pro rata share of the annual rent previously paid by plaintiff to defendant for lease of a tractor which was destroyed by fire halfway through the term of the lease, evidence was sufficient for the jury to find that plaintiff was not at fault for the destruction of the tractor and that he was therefore entitled to have the contract rescinded and the monies advanced returned where the lease required plaintiff to store the tractor only at the address shown on the face of the lease; this address was the plaintiff's residential postal address; plaintiff actually stored the tractor in a barn located on his farm property less than a mile from his residence; and the use of plaintiff's mailing address could reasonably be interpreted to mean the location of plaintiff's farming operations, not a precise location on the farm where the tractor was to be stored.

2. **Contracts § 20.1 — lease of tractor — destruction by fire — risk of loss on lessor — rescission of contract based on impossibility of performance**

In an action to recover a pro rata share of the annual rent previously paid by plaintiff to defendant for lease of a tractor which was destroyed by fire halfway through the term

of the lease, there was no merit to defendant's contention that the parties impliedly allocated the risk of loss to plaintiff because the tractor was in his care, custody, and control at the time of the fire and that the doctrine of impossibility of performance therefore would not be available to rescind the contract and void further performance, since the clause in the parties' contract allocating the burden of obtaining insurance against loss due to fire to defendants contemplated that the parties at least implicitly agreed that the defendant had assumed the risk of loss due to fire, and this was further indicated by the fact that defendant retained all of the insurance proceeds.

3. **Contracts § 20.1— lease of tractor—destruction by fire— sufficiency of insurance to cover amounts due under lease— issue not submitted—contract rescinded for impossibility of performance**

The trial court did not err in refusing to submit as an issue whether the insurance proceeds from destruction of a tractor by fire were sufficient to pay defendant all amounts due under the agreement for lease of the tractor by plaintiff, since the leased tractor was destroyed without fault of plaintiff; the contract was discharged; plaintiff was no longer liable for any of the executory rent payments under the lease; and defendant had been compensated for the value of the destroyed tractor as well as all of the rents owed it through the date the tractor burned.

4. **Contracts § 20.1— lease of tractor—destruction by fire— impossibility of performance—instruction proper**

The trial court properly instructed on the doctrine of impossibility of performance due to destruction of the subject matter of the contract, since the very nature of the contract, a lease agreement, contemplated the continued existence of the tractor as a condition to the perpetuation of the lease.

5. **Trial § 13.1— jury's inspection of lease during deliberations— discretion of trial court**

It was within the trial court's discretion to refuse to allow the jury to inspect the parties' lease during its deliberations.

BARNES v. FORD MOTOR CO.

[95 N.C. App. 367 (1989)]

6. **Attorneys at Law § 7.5 — preparation to defend against punitive damages claim — motion for attorney's fees should have been granted**

Plaintiff's action was primarily one in the nature of contract, and plaintiff's allegation of defendant's "willful" refusal to pay plaintiff did not give rise to a cause of action sounding in tort and so did not subject defendant to liability for punitive damages; therefore, defendant's motion under N.C.G.S. § 6-21.5 for attorney fees connected with its preparation to defend against the punitive damages claim should have been granted.

APPEAL by defendant from *Pridgen (Elton C.), Judge.* Judgment entered 13 June 1988 *nunc pro tunc.* Heard in the Court of Appeals 21 August 1989.

Plaintiff is a farmer and grocery store owner in Selma, North Carolina. On November 23, 1982 plaintiff leased a Ford 2-W10 dual-wheel tractor from B&W Tractor, Inc. for a term of five years. Lease payments were to be made annually on or before November 23rd in the amount of $7,372.71. As specified in the lease, the defendant maintained liability insurance on the Ford tractor to protect itself and plaintiff against fire, theft or similar casualty. Although not required by the terms of the lease, the plaintiff also obtained liability insurance on the tractor. The lease required the plaintiff to store the tractor only at the address shown on the face of the lease. This address was the plaintiff's residential postal address. Plaintiff actually stored the tractor in a barn located on plaintiff's farm property less than a mile from his residence.

On April 11, 1986, the plaintiff's barn as well as the leased Ford tractor were completely destroyed by fire. The cause of the fire was undetermined. Plaintiff's insurer issued a check in the amount of $9,889.89 jointly payable to plaintiff and defendant. Defendant also received a check in the amount of $9,111.11 from its own insurer as a result of the tractor's loss. The actual cash value of the tractor at the time it was destroyed was approximately $18,040.00. Defendant has retained the entire $19,000.00 represented by these two checks.

Plaintiff filed this action seeking recovery of a *pro rata* share of the annual rent previously paid to defendant for May-November 22, 1986 and seeking punitive damages for Ford Credit's alleged willful refusal to refund rents previously paid. The trial court dis-

missed plaintiff's claim for punitive damages. The jury found for the plaintiff on the breach of contract claim and returned a verdict for $5,000.00, which was later amended on plaintiff's motion to $4,545.00.

Defendant appeals and we affirm in part and reverse in part.

*Thomas H. Lock for plaintiff-appellee.*

*Faison & Brown, by Aida Fayar Doss and Mark C. Kirby, for defendant-appellant.*

LEWIS, Judge.

Defendant first assigns as error denial of its motions for directed verdict and judgment notwithstanding the verdict. A motion for directed verdict presents a question of law as to whether plaintiff's evidence is sufficient for submission to the jury. *Cameron v. New Hanover Memorial Hospital, Inc.*, 58 N.C. App. 414, 293 S.E.2d 901, *cert. denied*, 307 N.C. 127, 297 S.E.2d 399 (1982). The evidence is considered in the light most favorable to the plaintiff. *Everhart v. LeBrun*, 52 N.C. App. 139, 277 S.E.2d 816 (1981). A motion for judgment notwithstanding the verdict is technically a renewal of the motion for a directed verdict, *Harvey v. Norfolk Southern Railway Company, Inc.*, 60 N.C. App. 554, 299 S.E.2d 664 (1983), and the same standard of the sufficiency of the evidence is applied. *Snider v. Dickens*, 293 N.C. 356, 237 S.E.2d 352 (1977).

[1] Plaintiff presented sufficient evidence to submit the case to the jury on the issue of rescission of the contract based upon destruction of the subject matter of the lease agreement. Where the continued existence of the subject matter of a contract is essential to the performance of the contract and the subject necessary for performance is destroyed without the fault of either party, the contract is discharged or may be rescinded. *Blount-Midyette & Company v. Aeroglide Corporation*, 254 N.C. 484, 487, 119 S.E.2d 225, 227 (1961). Before plaintiff can seek rescission based upon this doctrine, he must show the property was destroyed without fault by him. *Id.; Pasquotank and North River Steamboat Company v. Eastern Carolina Transportation Company*, 166 N.C. 582, 82 S.E. 956 (1914).

Defendant contends that plaintiff was at fault for the destruction of the tractor because he failed to store the tractor at the residential address listed in the lease agreement. However, viewed

in the light most favorable to the plaintiff, the evidence was sufficient to be submitted to the jury and a jury could find that the parties intended to require the lessee to use the leased tractor only on his own farm except with the defendant's written permission. Giving the plaintiff the benefit of every reasonable inference, the use of his mailing address could be reasonably interpreted as showing the location of plaintiff's farming operations and not to designate the precise location on the farm where the tractor was to be stored. The plaintiff cannot be faulted for storing the tractor in his barn, a customary storage place for such farm implements.

In *Blount-Midyette & Company v. Aeroglide Corporation, supra,* the defendant Aeroglide Corporation had contracted with plaintiff to make certain installations of machinery and equipment in, and alterations to, plaintiff's grain elevator for a price of $23,650.50. 254 N.C. at 485. The defendant was to furnish all labor, materials and equipment necessary to perform the contract. The contract also provided that the plaintiff would close down the operation of its grain elevator and turn it over to the defendant's control on July 22, 1957. Two-thirds of the contract price was payable to the defendant on August 1, 1957, with the balance due on completion of the work by August 27, 1957. On August 16, 1957 the elevator was destroyed by fire. *Id.* Prior to the fire, plaintiff had advanced to the defendant $16,000. Plaintiff filed suit to recover this amount less a credit for $1,200 for improvements not destroyed by the fire. The Court affirmed the verdict in plaintiff's favor. Like the plaintiff in *Blount,* Barnes is entitled to monies advanced under the lease agreement. The evidence was sufficient for the jury to find that he was not at fault for the destruction of the tractor and therefore that he was entitled to have the contract rescinded and the monies advanced returned.

[2] Defendant also argues that the parties impliedly allocated the risk of loss to the plaintiff because the tractor was in plaintiff's care, custody and control at the time of the fire. If the allocation of the risk of loss was on the plaintiff, the doctrine of impossibility of performance would not be available to rescind the contract and avoid further performance. *Fraver v. North Carolina Farm Bureau Mutual Insurance,* 69 N.C. App. 733, 318 S.E.2d 340, *cert. denied,* 312 N.C. 492, 322 S.E.2d 555 (1984). However, on the present facts, we find that the risk of loss was not on the plaintiff. Paragraph 3 of the lease agreement requires the defendant to maintain in-

surance on the leased tractor to protect the defendant's ownership of the equipment from fire. This clause in the contract allocating the burden of obtaining insurance against loss due to fire to the defendants contemplates that the parties at least implicitly agreed that the defendant had assumed the risk of loss due to fire. This is further indicated by the fact that the defendant has retained all of the insurance proceeds.

Defendant's motions for directed verdict and judgment notwithstanding the verdict were properly denied.

The defendant also excepts to the issues presented and the instructions given to the jury. The following issues were submitted to the jury:

1. Was the tractor leased by the plaintiff, Bernie R. Barnes, from the defendant's assignor, B & W Tractor Company, destroyed by fire without fault of the plaintiff?

2. Is the plaintiff, Bernie R. Barnes entitled to rescind the leasing contract between the plaintiff and the defendant, Ford Motor Credit Company?

3. What amount, if any, is the plaintiff entitled to recover of the defendant?

[3] The defendant asserts as error the failure of the trial court to also submit to the jury its proposed issue, which read: "Were the insurance proceeds sufficient to pay Ford Motor Credit Company all amounts due under the lease?" The trial court's refusal to submit this issue to the jury was proper because the leased tractor was destroyed without fault of the plaintiff, and the contract was therefore discharged. *Pasquotank, supra* at 585, 82 S.E. at 957 (1914). Therefore, the plaintiff was no longer liable for any of the executory rent payments under the lease and the defendant was not entitled to submit this issue to the jury. The defendant has been compensated for the value of the destroyed tractor as well as all of the rents owed it through the date it burned. Defendant is not entitled to any further rents from the plaintiff nor to that portion of the rent the plaintiff paid in advance for the seven-month period after the tractor was destroyed and not replaced by the defendant.

[4] Defendant also objects to the trial court's instructions on the doctrine of impossibility due to destruction of the subject matter

of the contract. Specifically, the defendant assigns as error the premise that the parties to this lease contemplated the continued existence of the tractor as a condition to the completion of the lease term. We find that the very nature of the contract contemplated the continued existence of the tractor as a condition to the perpetuation of the lease. The lease was for the provision of a tractor for a five-year term. The contract stated that the tractor was to be returned at the end of the lease agreement and thus implies that the parties assumed that the plaintiff would be in possession of the tractor for the entire five-year period. The continued existence of the tractor was a condition precedent to plaintiff's annual rent payments. The fire which destroyed the tractor rendered the defendant's performance impossible and the judge's instructions on this doctrine were proper. We find no error.

[5] Defendant further assigns as error the refusal of the trial judge to allow the jury to inspect the lease during its deliberations. The decision to allow the jury to return to the courtroom and view exhibits is within the sound discretion of the trial court. *Nelson v. Patrick*, 73 N.C. App. 1, 326 S.E.2d 45 (1985).

In *Nelson v. Patrick*, the jury requested to review some of the plaintiff's medical bills during its deliberations. The court inquired whether defendants objected to sending the bills to the jury room. Defendants did object and the court sustained the objection. 73 N.C. App. 13, 326 S.E.2d at 53. The court then ruled in its discretion and allowed the jurors to return to the courtroom and pass the evidence among them. *Id.* Defendants objected but were overruled. In upholding the ruling of the trial court, we stated, "we find no authority, however, which prohibits the court from permitting the jury to view the exhibits in the courtroom in the presence of the parties. In that setting, where subject to objections by the parties and supervision by the court, the viewing may aid the fact-finding process." *Id.* at 14, 326 S.E.2d at 53. We analogized our ruling in *Nelson* to the similar rule contained in G.S. 15A-1233(a) which is the statutory equivalent in criminal trials. In both cases the decision to allow the jury to view the evidence in the courtroom over counsel's objection is within the trial judge's sound discretion. We find no abuse of discretion here.

[6] Finally, defendant asks that its motion for attorney fees on the issue of punitive damages be reversed. We agree with the defendant and reverse the denial of its motion for attorney fees

on this issue. The law is well settled in North Carolina that punitive damages in contract may not be recovered except for breach of contract to marry, *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979); *Newton v. Standard Fire Insurance Company*, 291 N.C. 105, 229 S.E.2d 297 (1976); *King v. Insurance Company of North America*, 273 N.C. 396, 159 S.E.2d 891 (1968), or breach of contract to purchase a burial plot or funeral service, *McDaniel v. Bass-Smith Funeral Home, Inc.*, 80 N.C. App. 629, 343 S.E.2d 228 (1986), unless the breach of contract also constitutes identifiable tortious conduct, accompanied by some element of aggravation. The present case is primarily one in the nature of contract and is not within any of these narrowly recognized exceptions. Plaintiff's allegation of defendant's "willful" refusal to pay plaintiff does not give rise to a cause of action sounding in tort and therefore does not subject the defendant to liability for punitive damages. Defendant's motion under G.S. 6-21.5 for attorney fees connected with its preparation to defend against the punitive damages claim should have been granted and we remand for judgment accordingly.

Affirmed in part and reversed in part.

Chief Judge HEDRICK and Judge ORR concur.