STEVE HALPRIN, PLAINTIFF v. FORD MOTOR COMPANY, DEFENDANT

No. 9121SC316

(Filed 15 September 1992)

1. **Uniform Commercial Code § 11 (NCI3d) — sale of pickup truck — breach of express warranties — buyer's notice to local seller**

    In an action for breach of express and implied warranties on a Ford Motor Company pickup truck, plaintiff satisfied the notice requirement in N.C.G.S. § 25-2-607(3)(a), which is ordinarily a condition precedent to a buyer's recovery for breach of warranty under the Code, since, by the language in its warranty booklet, Ford designated the selling dealership as its representative for the purposes of honoring the limited express warranty issued by Ford to plaintiff; express language in the warranty booklet made notice to Ford unnecessary; plaintiff repeatedly dealt with a number of personnel at his authorized dealership, none of whom adequately diagnosed or addressed the defective conditions in his truck; Ford had notice of the alleged warranty defect by virtue of plaintiff's phone call to and pursuit of his claim with Ford's Consumer Appeals Board in Charlotte; and plaintiff was not required to give Ford unlimited opportunities to honor its warranty.

    **Am Jur 2d, Sales §§ 1254, 1255.**

    **Sufficiency and timeliness of buyer's notice under UCC § 2-607 of seller's breach of warranty. 93 ALR3d 363.**

2. **Uniform Commercial Code § 11 (NCI3d) — breach of warranty — notice to immediate seller or remote manufacturer — no ruling by Court**

    The Court of Appeals specifically declines to rule on the question as to whether a buyer who seeks to recover for breach

of warranty must, pursuant to N.C.G.S. § 25-2-607(3)(a), give notice to the remote manufacturer as opposed to the immediate seller.

**Am Jur 2d, Sales § 1260.**

**Necessity that buyer of goods give notice of breach of warranty to manufacturer under UCC § 2-607, requiring notice to seller of breach. 24 ALR4th 277.**

APPEAL by plaintiff from judgment entered 25 October 1990 by *Judge J.B. Allen, Jr.*, in FORSYTH County Superior Court. Heard in the Court of Appeals 14 January 1992.

*Thomas G. Taylor for plaintiff-appellant.*

*Office of the General Counsel of Ford Motor Company, by Gary L. Hayden, and Maupin, Taylor, Ellis & Adams, P.A., by M. Keith Kapp and Daniel K. Bryson, for defendant-appellee.*

PARKER, Judge.

Plaintiff consumer appeals from summary judgment in favor of defendant manufacturer on plaintiff's claims for breach of express and implied warranties on a Ford Motor Company ("Ford") F-150 pickup truck. In his amended complaint in this action, filed 10 January 1990, plaintiff alleged defendant was unable, after a reasonable number of attempts, to conform the truck to Ford's express warranty and that defendant failed to arrange for repair or correction of persistent defects. According to plaintiff, he returned the truck to his selling Ford dealership on five occasions within the one-year warranty period for correction of problems with alignment, braking and poor gas mileage; and the attempted repairs were unsuccessful. The truck had not yet been driven 5,000 miles during the first four of these repair visits. Plaintiff also alleged material misrepresentation by dealership personnel—alleged by plaintiff to be agents of Ford—concerning items covered by express warranties, unfair or deceptive trade practices, breach of the implied warranties of merchantability and fitness for a particular purpose, and wilful or reckless disregard "to the rights and safety of the plaintiff."

Plaintiff prayed damages in the amount of the difference between the truck's purchase price and its actual value at the time of sale, plus consequential damages and treble damages under

## HALPRIN v. FORD MOTOR CO.

[107 N.C. App. 423 (1992)]

N.C.G.S. § 75-16 or, in the alternative, punitive damages. Plaintiff's warranty claims are governed by the Sales Article of the Uniform Commercial Code, N.C.G.S. §§ 25-2-101 *et seq.* ("the Code"), rather than the New Motor Vehicle Warranties Act, N.C.G.S. §§ 20-351 *et seq.* The Warranties Act did not become effective until October 1987 and did not apply retroactively to the 1 April 1987 date of purchase for plaintiff's truck. *Estridge v. Ford Motor Co.*, 101 N.C. App. 716, 401 S.E.2d 85, *disc. rev. denied*, 329 N.C. 267, 404 S.E.2d 867 (1991).

Ford's answer to the amended complaint averred, *inter alia*, that the dealership which sold and serviced plaintiff's truck was an authorized, independent dealer for Ford but not Ford's agent; plaintiff's acceptance of the truck waived all remedies against Ford "except the right to enforce the express limited warranty contained in the warranty facts booklet"; plaintiff's actions with respect to his truck were not in compliance with the condition precedent to Ford's warranty obligation that plaintiff return his truck to an authorized Ford dealer for repairs; Ford "at all times fulfilled all of the terms and conditions of the warranty obligations which it may have had to plaintiff"; and plaintiff's misuse, abuse or neglect of the truck was "the sole cause of any defect complained of." On 4 September 1990 plaintiff took a voluntary dismissal of his fraud and unfair or deceptive trade practices claims, without prejudice.

Ford's discovery in the case included two sets of interrogatories, two requests for production of documents and the taking of plaintiff's deposition on 2 October 1990. Based on the pleadings, plaintiff's answers to the interrogatories and his deposition, on 8 October 1990 Ford filed a motion for summary judgment and dismissal of plaintiff's remaining claims with prejudice. The trial court granted summary judgment in Ford's favor.

Summary judgment is appropriate if the moving party establishes the lack of any triable issue of material fact and entitlement to judgment as a matter of law. N.C.R. Civ. P. 56(c); *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 376 S.E.2d 425 (1989).

On appeal plaintiff argues his claims for breach of warranties were improperly dismissed, in that he gave Ford ample opportunity to repair the vehicle and the technicians at plaintiff's authorized Ford dealership, Cloverdale Ford in Winston-Salem, North Carolina, failed to repair the defective conditions on his truck. We agree

that the trial court erred with respect to plaintiff's claims for breach of express warranty and the implied warranty of merchantability. Accordingly, we reverse and remand those claims. We affirm as to the remaining claims for breach of the implied warranty of fitness for a particular purpose and for punitive damages.

[1, 2]    The dispositive question is whether plaintiff satisfied the notice requirement in N.C.G.S. § 25-2-607(3)(a), which is ordinarily a condition precedent to a buyer's recovery for breach of warranty under the Code. *See, e.g., Maybank v. Kresge Co.*, 302 N.C. 129, 133, 273 S.E.2d 681, 683 (1981). We conclude plaintiff demonstrated that he complied both with "his own obligations under [the warranty] and that he has taken the steps required by Article 2." *Stutts v. Green Ford, Inc.*, 47 N.C. App. 503, 511, 267 S.E.2d 919, 924 (1980).

Defendant argues that under N.C.G.S. § 25-2-607(3), plaintiff was required and failed to notify Ford the manufacturer of any claim for breach of warranty. We address this issue only to note that the jurisdictions are split as to whether this notice provision of the Code requires notice to the remote manufacturer.

When North Carolina originally adopted the Code in 1965, a seller was defined simply as "a person who sells or contracts to sell goods." N.C.G.S. § 25-2-103(d) (Replacement 1965). Effective 23 June 1983 an amendment to this provision explicitly defined motor vehicle manufacturers to be sellers as well, with respect to buyers of their products to whom manufacturers make express warranties, "notwithstanding any lack of privity" between the purchaser of a vehicle and its manufacturer, "for purposes of all rights and remedies available to buyers" under the Code. N.C.G.S. § 25-2-103(d) (Cum. Supp. 1985). Under N.C.G.S. § 25-2-607(3)(a), which has remained unchanged since 1965, once a buyer accepts a seller's tender, he must notify the seller of an alleged breach of warranty within a reasonable time of discovery of any defect and allow the seller opportunity to remedy said defect.

The majority of courts in other jurisdictions that have construed this notice provision in the Code have held that buyers need notify only their immediate sellers. *Cooley v. Big Horn Harvestore Systems, Inc.*, 813 P.2d 736, 741 (Colo. 1991) (section 2-607(3)(a) does not require notice to remote manufacturer as condition precedent to bringing suit for breach of manufacturer's warranty of product); *Firestone Tire & Rubber Co. v. Cannon*, 295 Md. 528, 456 A.2d 930 (1983), *aff'g* 53 Md. App. 106, 452 A.2d 192

(1982) (notice to immediate seller constitutes sufficient notice to manufacturer); *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344, 19 Ill. Dec. 208, 378 N.E.2d 1083 (1978); *Carson v. Chevron Chemical Co.*, 6 Kan. App. 2d 776, 785, 635 P.2d 1248, 1256, 24 A.L.R.4th 258, 269 (1981) (in ordinary buyer-seller transaction, section 2-607(3)(a) requires notice of breach only to immediate seller); *Church of the Nativity v. Watpro, Inc.*, 474 N.W.2d 605, 609-610 (Minn. App. 1991) (notice need go only to immediate seller and not to others in distribution chain); *Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357 (Mo. App. 1989) (in general, buyer required to give notice of breach of warranty only to immediate seller); *Seaside Resorts, Inc. v. Club Car, Inc.*, 416 S.E.2d 655, 663 (S.C. Ct. App. 1992) (interpreting N.C.G.S. § 25-2-607(3)(a) to require "a retail buyer to notify only the retail seller who tendered the goods to him, not wholesalers, distributors, manufacturers, or others who sold the goods further up the chain of commerce"); *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888 (Tex. Civ. App. 1979) (section 2-607 notice is between buyer and immediate seller); *Tomczuk v. Town of Cheshire*, 26 Conn. Supp. 219, 222, 217 A.2d 71, 73 (1965) (seller in section 2-607 "obviously refers to the person who made the immediate sale"); *contra Redfield v. Mead, Johnson & Co.*, 266 Or. 273, 512 P.2d 776 (1973); *Western Equipment Co., Inc. v. Sheridan Iron Works, Inc.*, 605 P.2d 806, 810-11 (Wyo. 1980) (even with abolition of privity requirement, notice to manufacturer is still required); *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 292 (Alaska 1976) (same) (dictum); *but see Shooshanian v. Wagner*, 672 P.2d 455, 463 (Alaska 1983) (filing of complaint constitutes effective notice to manufacturer, in that "[a] consumer unfamiliar with commercial practices should not be barred from pursuing a meritorious claim because he was unaware of the need to notify a remote seller of breach before bringing suit"). As the facts of the case under review make a ruling on this question unnecessary, we specifically decline to decide this legal issue.

Even if it be assumed that notice to Ford was required, we find that by the language in its warranty booklet Ford designated the selling dealership as its representative for the purposes of honoring the limited express warranty issued by Ford to plaintiff. Upon purchasing his truck plaintiff received a brochure containing Ford's limited warranty

HALPRIN v. FORD MOTOR CO.

[107 N.C. App. 423 (1992)]

that your selling dealer will repair, replace, or adjust all parts (except tires) that are found to be defective in factory-supplied materials or workmanship. The defects must occur under normal use of the vehicle during the warranty coverage period.

In the section titled "A Quick Summary" of the warranty package, Ford's booklet informs consumers that there are three aspects to "How the warranty coverage works," namely "Where to go for warranty service," "What you must pay" and "When you need towing." "Where to go" instructs the Ford owner that "[t]he dealer who sold you the car or light truck will perform your warranty repairs." Several pages later Ford repeats this information under the boldface rubric "Who repairs a covered defect—and how? The dealer who sold you the car or light truck will repair all covered defects."

In the more detailed section called "How to Deal with Warranty Problems," Ford outlines the "first steps to take" as follows.

Your satisfaction is important to Ford Motor Company and to your dealer. Normally, warranty matters concerning your car or light truck will be resolved by your dealer's Sales or Service Departments. Ford recommends that you take these steps:

1. First talk with your dealer's Service Manager or Sales Manager. Most warranty problems will be resolved at this level. However, if the matter is not resolved to your satisfaction, you should consider steps 2 and 3.

2. Discuss the problem with the owner or General Manager of the dealership.

3. If you still cannot come to an agreement, contact the Ford Parts and Service District Office in your area. These offices are listed in your Owner Guide, with their addresses and phone numbers.

4. If you do not get a solution that satisfies you when you follow steps 1, 2, and 3, you may contact the Ford Consumer Appeals Board. It is recommended but **not** required for warranty matters that, before you contact the Board, you first discuss the matter with dealership management and with the Ford Parts and Service Division District Office closest to you.

**HALPRIN v. FORD MOTOR CO.**

[107 N.C. App. 423 (1992)]

We note that the thrust of Ford's advice to new car and truck owners is to try to resolve warranty problems at the dealership level. This advice is consistent with the terms of Ford's express warranty that "your selling dealer will repair, replace, or adjust all parts . . . that are found to be defective." The evidence at the summary judgment hearing in the present case was that plaintiff had repeatedly dealt with a number of personnel at his authorized dealership, none of whom adequately diagnosed or addressed the defective conditions in his truck. We note, too, that Ford merely recommends that consumers "consider" its step 3, contacting a Ford regional office, and that Ford explicitly states it is "*not* required for warranty matters" that a consumer do so before contacting Ford's Consumer Appeals Board. In our view, the express language in Ford's warranty booklet makes notice to Ford unnecessary. The manufacturer cannot misdirect the uninformed consumer and then take legal refuge in the Code. Under Ford's procedure, the purchaser is required to take his car to the dealership and under such a scheme the dealer's attempts to make repairs afford Ford reasonable opportunity to cure warranty problems. *See also Ventura v. Ford Motor Corp.*, 180 N.J. Super. 45, 433 A.2d 801 (App. Div. 1981).

Moreover, based on the evidence in this record, Ford had notice of the alleged warranty defect. Plaintiff stated that he telephoned a toll-free Ford number in Charlotte, North Carolina, when plaintiff and his dealership were unable to resolve plaintiff's problems. In answer to defendant's interrogatories, plaintiff explained:

> When I complained to Ford headquarters using its 800 number, their response was that they had talked to the dealership and the defect was repaired which also was incorrect.

Ford's Consumer Appeals Board ("Board") for North Carolina transactions is in Charlotte. The toll-free number for the Board is provided in Ford's Warranty Information Booklet in the section on dealing with warranty problems. No other telephone number for Ford is provided in that section of the booklet.

Plaintiff then pursued a claim, at no cost to him, with the Board in Charlotte. That Board is an independent review board consisting of three consumer representatives, a Ford dealer and a Lincoln-Mercury dealer. The two dealers act only as non-voting advisors on the Board. In Ford's arbitration process the dissatisfied

consumer, the dealer and Ford all submit statements to the Board, which reaches its decision by simple majority vote. On 13 February 1989 the Board determined plaintiff's truck was within company specifications and sent plaintiff a letter denying his claim. Plaintiff brought his original action against Ford a little more than three months later.

In support of its argument that this Court should affirm summary judgment in its favor, Ford contends that "the undisputed evidence showed that Plaintiff had not notified Ford timely of the alleged breach and had not given Ford any opportunity to comply with its obligations under the warranties." We find no such "undisputed evidence" of lack of notice in the record.

> The notification which saves the buyer's rights . . . need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

N.C.G.S. § 25-2-607 Official Comment 4 (1986). In fact, Ford concedes on appeal that Ford received "notice . . . of the alleged breach of its warranty on this truck . . . when Plaintiff filed an application to the [Consumer Appeals Board]" and Ford sent out a representative to test the truck in early 1989. Such notice opened the way for informal settlement of plaintiff's warranty claims, as contemplated by the Code, well in advance of plaintiff's filing this lawsuit. Thus we find evidence that Ford itself was given the actual opportunity — had it wished to do so — to diagnose and correct the truck's problems before plaintiff elected to take legal action against Ford. For all the foregoing reasons, plaintiff's evidence established genuine issues of fact with respect to Ford's breach of its express warranty that the selling dealer would repair defects and its breach of the implied warranty of merchantability.

Ford additionally argues on appeal that summary judgment was appropriate in that plaintiff received information at the end of 1989, more than half a year after filing his original complaint, that the alignment and brake problems were repairable and thereafter refused to have the repairs performed. Plaintiff's refusal is no impediment to his claim for breach of express warranty against Ford.

> A manufacturer or other warrantor may be liable for breach of warranty when it repeatedly fails within a reasonable time

to correct a defect as promised. A party seeking to recover for breach of a limited warranty is not required to give the warrantor unlimited opportunities to attempt to bring the item into compliance with the warranty.

*Stutts v. Green Ford, Inc.*, 47 N.C. App. at 511-12, 267 S.E.2d at 924 (citations omitted). Repairability *per se* is not the issue in this case; rather, the question is whether Ford performed its warranty obligations and, if not, what remedy plaintiff is owed.

Plaintiff's evidence did, however, fail to create a genuine issue as to Ford's breach of the implied warranty of fitness for a particular purpose under N.C.G.S. § 25-2-315, in that plaintiff used his truck only for general everyday purposes. In addition, plaintiff's allegations do not identify any tortious conduct by Ford that would subject defendant to liability for punitive damages. *See, e.g., Barnes v. Ford Motor Co.*, 95 N.C. App. 367, 382 S.E.2d 842 (1989). Accordingly, we affirm the dismissal of those claims.

Affirmed in part; reversed and remanded in part.

Judges ARNOLD and WALKER concur.